Argued April 5, affirmed June 2, 1967

STATE HIGHWAY COMMISSION, *Respond-
ent, v.* CLACKAMAS WATER DIS-
TRICT, *Appellant.*

428 P. 2d 395

*Michael J. Walsh,* Portland, argued the cause for appellant. With him on the briefs were Shuler, Rankin, Myers & Walsh and Howard A. Rankin, Portland.

*J. Robert Patterson,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and G. E. Rohde, Assistant Attorney General and Chief Counsel for the Oregon State Highway Commission, Salem.

Before PERRY, Chief Justice, and MCALLISTER, O'CONNELL, DENECKE and REDDING, Justices.

O'CONNELL, J.

This is an action by the State Highway Commission to recover the cost of relocating defendant's water pipeline necessitated by the construction of a section of Cascade Highway in Clackamas County. Defendant appeals from a judgment for plaintiff.

In 1927 defendant water district obtained permission from Clackamas County to lay water pipes along the right of ways of certain county roads. The permission granted was subject to the condition that the "District shall move or relay any pipes that may in the future interfere with any change of grade or relocation or other work on any Road * * *."

In 1960 plaintiff adopted a resolution providing for an extension of the Cascade Highway, a part of which was to cross the county roads in which defendant had placed its piplines. Plaintiff made demand upon defendant to relocate its pipeline at its own expense. Defendant refused, whereupon plaintiff effected the relocation and brought the present action to recover the cost of relocation.

Defendant contends that the installation of its pipeline pursuant to the grant of permission from the county vested in defendant a property right which could not be taken by plaintiff without just compensation.

Defendant concedes that it would have had the obligation to bear the cost of relocating its pipeline if the county rather than the state had made the change in the road. Defendant contends, however, that the state does not stand in the shoes of the county and has the same obligation as any other person to pay for the relocation of defendant's pipeline. Plaintiff contends, in effect, that the state is the alter ego of

the county and that the county's interest in right of ways along county roads inures to the state, including the right to require relocation of pipelines.

The relationship between the state and the several counties has been explained in a number of our previous cases. In *MacKenzie v. Douglas County*, 91 Or 375, 379-380, 178 P 350 (1919), this court said:

> "* * * [I]t may not be inappropriate to consider the relation of a county to the state. We think the decisions may be said to be uniform that a county is not an independent governmental entity —is not even a corporation in the same sense that municipalities are corporations. It is a *quasi* corporation created by legislative fiat for governmental purposes and subject to the legislative will in all matters not prohibited by some constitutional restriction."[1]

In *State ex rel State Public Welfare Comm. v. Malheur County Court*, 185 Or 392, 409, 203 P2d 305 (1949), it was observed that "a county is merely a political agent of the state created by law for governmental purposes, invested with legislative powers and charged with the performance of duties for the state. *Yamhill County v. Foster*, 53 Or. 124, 99 P. 286; *Schubel v. Olcott*, 60 Or. 503, 120 P. 375."

In *Powell Grove Cem. v. Multnomah County*, 228 Or 597, 600, 365 P2d 1058 (1961), the county agreed with a cemetery corporation that it would care for and preserve an existing cemetery and that the cemetery would "not be removed from its present location." Thereafter the legislature enacted a statute authorizing counties to vacate cemeteries over which they had control. The court held that in spite of the agreement

---

[1] See also *Miller v. Henry*, 62 Or 4, 124 P 197 (1912).

the county had the power to abandon the cemetery. In holding that the contractual rights must give way to the welfare of the public, the court said:

> "We will assume for purposes of this opinion that an agreement as alleged by plaintiff was entered into between the parties. This contract, of course, is valid between the parties for all purposes, except it cannot be considered as a binding force to prevent the future exercise of the state's police powers. These powers cannot be 'bargained or contracted away.' *Laurel Hill Cemetery v. City and County of San Francisco,* 152 Cal 464, 475, 93 P 70, 74."

The court went on to explain that

> "* * * counties are subdivisions or agencies of state government, created by legislative fiat for political and civil purposes, and they are controlled and derive their powers, except as provided in the constitution, through acts of the legislature."

 The vicarious character of the county's authority described in the foregoing cases must be read into the grant of permission from Clackamas County to defendant to lay its pipeline. That grant was made by the county as an "agent of the state." Consequently, the condition in the grant requiring defendant to relocate its pipeline in the event of a relocation of the road inured to the state of Oregon, the principal. Even if the express condition in the grant were read as applying only to relocation or other work done on the road by the county, the agreement between the county and the district would not be binding upon the state. As we said in *Powell Grove Cem. v. Multnomah County, supra,* the state's police power cannot "be bargained or contracted away" by a county.

██ When a franchise is granted by the state or county to lay pipes or other structures in a roadway,

there is an implied obligation on the part of the grantee to relocate its facilities at its own expense when a governmental use of the streets makes the relocation necessary.[⑳] This implication has been found even where the governmental unit granting the franchise was not the agent of the governmental unit demanding the relocation of the facilities. Thus, in *Southern California Gas Co. v. City of Los Angeles*, 50 Cal2d 713, 329 P2d 289, 291-92 (1958), the franchise was granted by the county to a public utility to lay its gas lines and the demand for relocation was made by a city in extending its sewer line into county territory. The public utility contended that any implied obligations in the franchise to relocate its facilities could not be invoked for the benefit of the city operating outside its territorial limits. The court replied:

> "* * * We cannot agree with this contention. Such obligations rest on the paramount right of the people as a whole to use the public streets wherever located, and the fact that a franchise is granted by one political subdivision as an agent of the state (see, San Francisco-Oakland Terminal Rys. v. County of Alameda, 66 Cal.App. 77, 83, 225 P. 304; Belfast Water Co. v. City of Belfast, 92 Me. 52, 42 A. 235, 237) does not defeat the right of another such agent acting in its governmental capacity to invoke the public right for the public benefit."

The court went on to say:

> "The right of municipal corporations to require utilities to relocate their lines to make way for governmental uses of the streets has usually been described as resting in the police power, and it has frequently been stated in this context that the police power cannot be bargained away."

---

[⑳] Southern California Gas Co. v. City of Los Angeles, 50 Cal2d 713, 329 P2d 289 (1958) and cases cited therein.

■ The trial court correctly concluded that the franchise granted to defendant "is not a vested property right but merely a permissive use subject to revocation or change whenever the use of the right of way for the benefit of the public requires it."

■■ Cases relied upon by defendant holding that compensation must be paid for the cost of relocation where the facility was originally laid in private property and later acquired for a governmental purpose obviously have no application to the present case where the facility was laid in property which at the time of installation was owned by a governmental unit.[9] When a franchise is granted to install a pipeline or other facilities in land held by a governmental unit it is reasonable to imply a limitation on the grant requiring the grantee to bear the cost of relocation in the event that the construction of a highway or other public work is deemed desirable. However, no such implication arises from the creation of an easement to install facilities granted by an owner of private property.

The judgment of the trial court is affirmed.

---

[9] Among the cases holding that compensation must be paid for the relocation of facilities installed on private property are: County of Contra Costa v. Central Contra Costa Sanitary District, 182 Cal App2d 176, 5 Cal Rptr 783 (1960); Multnomah County v. Rockwood Water District, 219 Or 356, 347 P2d 110 (1956).