The **WESTERN UNION TELEGRAPH COMPANY**, Appellant,

v.

**TARRANT COUNTY**, Texas, Appellee.

No. 17071.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 23, 1970.

Rehearing Denied Feb. 20, 1970.

———◆———

John Fox Holt and Stephen L. Mayo, Dallas, for appellant.

Frank Coffey, Dist. Atty., and Don E. Burdette, Asst. Dist. Atty., Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

This was a suit for declaratory judgment brought by appellant, Western Union Telegraph Company, against appellee, Tarrant County, by which appellant sought reimbursement for costs incurred by it in salvaging and rerouting its telegraph cables (plus conduit rental charges, damages and attorney's fees) as necessitated by the abandonment and closing of a section of a public street in which its cables were situated pursuant to authority of Article 1416, Vernon's Annotated Texas Civil Statutes. The District Court denied all affirmative relief sought, hence this appeal.

We affirm.

The facts stipulated and agreed to by the parties and other facts undisputed in the record are summarized as follows:

The plaintiff, Western Union Telegraph Company, is a corporation duly organized and operating under the laws of the State of New York. It is duly authorized to do business in the State of Texas. The defendant, Tarrant County, is duly organized and existing under the laws of the State of Texas.

The qualified voters of Tarrant County, Texas, approved a bond issue of $16.5 million in an election conducted April 25, 1964. Fifteen (15) million dollars of the bond issue was to be used in the construction of the Tarrant County Convention Center.

Thereafter defendant selected a site for the Convention Center in the southern portion of the downtown district of Fort Worth, Tarrant County, Texas. It is within an area bounded by Commerce, Houston, Ninth and Fourteenth Streets.

The defendant and the City of Fort Worth, Texas, negotiated a contract for the abandonment by the City of Fort Worth of the streets in the Center site and relocating by the City of Fort Worth of its utilities situated therein, for the sole purpose of providing a clear, unobstructed site for the Convention Center and its buildings and facilities.

Thereafter on December 13, 1965, the City Council of the City of Fort Worth, Texas, passed and adopted Ordinance No. 5486. This was done pursuant to the above contract and consistent with its terms and provisions.

Plaintiff is a corporation engaged in the transmission of telegraphic communications within the meaning of Vernon's Annotated Texas Statutes, Article 1416.

As such, plaintiff has maintained underground telegraphic facilities in that section of Main Street between Ninth and Fourteenth Streets in the City of Fort Worth,

Tarrant County, Texas (abandoned by said City Ordinance and within the confines of the said Convention Center) since 1923 to July, 1966. Such facilities were an integral part of its communication system and did not constitute a hazard or danger to the public.

When the City of Fort Worth abandoned Main Street between Ninth and Fourteenth Streets, as aforesaid, no other street or road was created or constructed to replace it. (The contract between the City and County recognized the necessity of providing "new routes" to "prevent the congestion of traffic around the convention center" and "to accommodate the increased pedestrian and vehicular traffic caused by the construction of the Convention Center and the closing of the public streets". This contemplated the widening of all streets abutting the perimeter of the Center and the County agreed to dedicate sufficient right of way to accomplish this purpose.)

Prior to June 1, 1966, defendant had requested plaintiff to remove its said facilities in Main Street, between Ninth and Fourteenth Streets.

On June 30, 1966, plaintiff and defendant entered into an agreement which was executed and approved by action of the Tarrant County Commissioners Court on June 30, 1966, in which it was agreed that Western Union, by proceeding with the relocating of its facilities, would in no way prejudice any right it might have to obtain reimbursement from the County for its costs of relocation, including costs of any litigation relating to the subject. Under this agreement the County was able to proceed with the construction of the project subject to the future litigation involving the claims of Western Union.

Subsequent thereto, to-wit, July 19, 1966, plaintiff commenced removing its said facilities under Main Street between Ninth and Fourteenth Streets, and completed the relocation thereof on August 25, 1966. It was stipulated that the costs of relocation amounted to $19,306.11. Western Union contends that its attorney's fees are one of the costs of litigation. The fees amount to $7,500.00 which the court found to be reasonable. There is no stipulation or agreement to the effect that the attorney's fees were to be included in the costs of litigation.

Plaintiff did not consent to the defendant's taking its said facilities without just compensation.

By its nine points of error the plaintiff is contending that the court erred in holding that it did not have a vested compensable right in Main Street in the City of Fort Worth, Texas, under either Art. 1416, V.A.C.S., or Fort Worth City Ordinance No. 5486. Points 8 and 9 relating to statutory authority or lack thereof on the part of the defendant in the handling of the matter with the City are based on the assumption that defendant had a vested compensable right.

■ The plaintiff has stipulated in open court that it has no right except that which is authorized by Art. 1416, V.A.C.S., or that which it may have derived from the City of Fort Worth Ordinance No. 5486. (The latter made some reference to reservation of easements in the streets closed by such ordinance.) We find no merit to any claims under the said ordinance. The City was powerless to give, grant, or reserve some easement which was nonexistent. We are concerned therefore with the single question of what rights, if any, the plaintiff had under Art. 1416, V.A.C.S. It provides: "Corporations created for the purpose of constructing and maintaining magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters."

█ The plaintiff relies heavily upon the fact that its lines have been installed since 1923, a period of approximately 43 years as of the time of suit. We find no merit in this position. The long duration of the plaintiff's free use of the city streets does not ripen into a vested compensable right in the street.

Having no vested right to use any public street perpetually or for any particular time the plaintiff should not be heard to complain when the progress of a community requires that the use of the street involved be terminated.

█ The City of Fort Worth had the authority to close Main Street for street purposes pursuant to Art. 1175, V.A.C.S., Sec. 18. When the City exercised this authority by enactment of Ordinance No. 5486 the use for such purposes ceased as did the free uses by utilities granted by Art. 1416, V.A.C.S. The City had only surface use as trustee for the public. It could not reserve an additional easement or right for the plaintiff.

The authorities relied upon by the plaintiff fall generally into two classes, i. e.: (1) cases involving the right of a city to levy taxes on existing lines and street use; and (2) those involving the right to compensation for an interest in land conveyed by the fee owner.

The case at bar does not involve either of the above classes or categories.

This controversy involves only the right of a telegraph company (or other utility) to occupy a specific location in a specific public street undisturbed and perpetually under the provisions of Art. 1416, V.A.C. S., and thus regardless of public convenience to have its lines or parts thereof condemned as vested property rights in order to obtain removal thereof and relocation.

█ In argument the plaintiffs conceded that had the street in question been closed and another street opened to replace it that it would be required to relocate in the new street without any right to compensation. We are unable to see how the failure to create a new street would have the effect of granting plaintiff a vested right in the old or closed street. It is clear from the record that the perimeter streets were widened to accommodate the increased vehicular and pedestrian traffic caused by the closing of the streets in question and the traffic thus rerouted over such improved and widened streets.

█ The fact that the public street in question was closed and diverted to another public use pursuant to the public will and the authorized actions of the City and County cannot have the effect of transforming appellant's permissive right under Art. 1416, supra, into a vested right.

█ It cannot be seriously argued that the City and County did not have the authority to close the streets in question and divert same to another public use. Once this was done there was no public road or street in the same location upon which appellant could set its poles, piers, etc., as provided by Art. 1416, V.A.C.S. The latter article specifies public roads, streets and waters only for such use by the appellant. When such public road or street ceased to exist the appellant's right to the use thereof also ceased. It then became incumbent upon it as well as the general public to conform to such change in the character of the public use.

All points of error are overruled and the judgment of the trial court is affirmed.