CITY OF CENTER LINE *v.*
MICHIGAN BELL TELEPHONE COMPANY

1. MUNICIPAL CORPORATIONS—PUBLIC UTILITY FRANCHISES—VESTED RIGHTS.

A franchise, upon acquisition and exercise by a public utility, becomes a vested property right.

2. MUNICIPAL CORPORATIONS — URBAN RENEWAL PROJECT — PUBLIC UTILITY FRANCHISES — POLICE POWER — STATUTES — COMPENSATION.

The common-law rule that a utility company's rights are subordinated to the police power of the municipal corporation should not be imposed where the legislature has expressly excepted utility companies from the rule in urban renewal matters (MCLA § 125.74).

3. STATUTES—CONSTRUCTION—COMMON LAW.

Courts should look to the expression of legislative intention in determining the rights of the parties when the common law conflicts with an act of the legislature.

4. MUNICIPAL CORPORATIONS — URBAN RENEWAL PROJECT — PUBLIC UTILITY FRANCHISES — COMPENSATION.

A city which condemns land for an urban renewal project must compensate a public utility company for the expense of relocating its equipment caused by the project because failure to compensate the public utility company would amount to the imposition of substantial damages on one private corporation

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  26 Am Jur 2d, Eminent Domain § 173.
36 Am Jur 2d, Franchises § 5.
[2]  26 Am Jur 2d, Eminent Domain § 97.
[3]  50 Am Jur, Statutes §§ 223, 403.
[4]  26 Am Jur 2d, Eminent Domain § 173.
36 Am Jur 2d, Franchises § 8.
Compensation or damages for condemning a public utility plant. 68 ALR2d 392.

which would inure to the benefit of another private corporation, and the utility company's users would ultimately bear the burden of relocation costs for a socially-oriented program operating under the police power and also because the legislature has provided that relocation costs may be included in the development plan costs (MCLA § 125.74).

Appeal from Macomb, Howard R. Carroll, J. Submitted Division 2 June 8, 1970, at Detroit. (Docket No. 7,436.) Decided September 30, 1970. Leave to appeal granted December 4, 1970. 384 Mich 788.

Condemnation proceeding by City of Center Line. Michigan Bell Telephone Company moved to intervene in order to protect its property rights in streets and alleys located within the condemned area. Motion denied. Michigan Bell Telephone Company appeals. Reversed and remanded.

*Roy W. Rogensues,* for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy (George E. Ward, A. Hilliard Williams, John L. Vanker, Jr., James M. Smith, Donald E. Brown, and Mary M. Conrad,* of counsel), for intervenor-appellant.

Before: DANHOF, P. J., and V. J. BRENNAN and J. J. KELLEY, Jr.,[*] JJ.

DANHOF, J. Michigan Bell Telephone Company appeals from the decision of the Macomb County Circuit Court barring its intervention in condemnation proceedings instituted by the city of Center Line pursuant to the Rehabilitation of Blighted Areas Act, Pa 1945, No 344, as amended.[1] The primary issue before us is whether Michigan Bell has a compensable right for expenses in relocating

[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 125.71 *et seq.* (Stat Ann 1969 Rev § 5.3501 *et seq.*).

equipment as a result of urban renewal which it may assert in condemnation proceedings.

The city of Center Line undertook a federally-assisted low-rent housing project to rehabilitate an area of the city. The plan contemplated acquisition of land, demolition of structures, and vacation of streets and alleys. The city sought by purchase and condemnation to acquire the property involved. However, the city did not attempt to condemn the property interests of Michigan Bell nor did the plan include any provision to compensate Michigan Bell for relocating its facilities. To avoid delaying the urban renewal project, Michigan Bell consented to remove and relocate its equipment without prejudice to its rights in this action.

At the outset we note that the precise question before us has not been discussed previously in Michigan.[2] In addition, we are aware of the multitude of decisions from other jurisdictions which find a utility company has no compensable right under facts similar to those presented here;[3] nevertheless, we think that a utility company should be compensated by the city for relocation expenses made necessary by urban renewal projects for two reasons. First, where the condemned land is transferred to

---

[2] *City of Detroit* v. *Michigan Bell Telephone Company* (1955), 374 Mich 543, did not discuss the issue before us in the present case despite its essentially similar facts. In addition, the precedent of the decision is binding only in a case involving the same parties since the decision was made by less than a majority of the justices. *Corporation & Securities Commission* v. *American Motors Corporation* (1966), 4 Mich App 65, 67; *Corporation & Securities Commission* v. *McLouth Steel Corporation* (1967), 7 Mich App 410.

[3] For recent cases, see *County of Santa Barbara* v. *United States* (CD Cal, 1967), 269 F Supp 855; *City of Wichita* v. *Kansas Gas & Electric Company* (1970), 204 Kan 546, 464 P2d 196; *Consolidated Edison of New York* v. *John V. Linsay, as Mayor* (1964), 24 NY 2d 309 (300 NYS2d 321) (248 NE2d 150); *New York Telephone Company* v. *City of Binghamton* (1966), 18 NY2d 152 (272 NYS2d 359) (219 NE2d 184); *State Highway Commission* v. *Clackamas Water District* (1967), 247 Ore 216, 428 P2d 395; *Western Union*

a private concern for development,[4] the failure to compensate the utility company for relocation expenses amounts to the imposition of substantial damages on one private corporation which inures to the benefit of another private corporation. Secondly, it is inappropriate for the utility's users, who must bear the ultimate burden if relocation costs are imposed on the utility, to alone pay for a socially-oriented program[5] operating under the guise of the police power. Such a burden should be borne by the general taxpaying public.[6]

The explicit language of the Rehabilitation of Blighted Areas Act supports our conclusion. In § 2, the legislature extensively defined "real prop-

*Telegraph Company* v. *Tarrant County* (Tex Civ App, 1970), 450 SW 2d 763.

[4] See Report of the United States Senate Committee on Banking and Currency, 1949 US Code & Cong Serv 1550, 1562: "[A] local public agency would acquire, through purchase or condemnation, a slum or blighted area selected in accordance with a general plan of redevelopment for the locality as a whole. The local public agency would then clear the land and make it available by sale or lease, for private or public redevelopment in accordance with the predetermined local plan for the area." We do not question, by our statement above, the public nature of the purpose in condemning property for slum clearance despite the fact that such property passes into private hands incident to this exercise of the police power. *City of Detroit* v. *Michigan Bell, supra,* 551, 563; *In re Slum Clearance* (1951), 331 Mich 714, 719.

[5] The Senate Committee makes this clear throughout its report. See in particular, *supra,* p 1560: "These slums and blighted areas have existed and have grown for generations. Approximately one out of every five of our urban families is living today under slum conditions which, in turn, are the breeding ground for disease, juvenile delinquency, and crime. Your committee is convinced that the Nation cannot and should not tolerate indefinitely the social costs resulting from the impact of these conditions." See also the reports of the Senate Committee on Banking and Currency at 1954 US Code & Cong Serv 2723 and 1959 US Code & Cong Serv 2844.

[6] One commentator on the Supreme Court's decision in *City of Detroit* v. *Michigan Bell, supra,* equated the burden borne by the public through local or federal taxes if relocation expenses were imposed on the renewal project with the burden on the utility's users if they were required to assume these expenses. John E. Glavin, "1965 Annual Survey of Michigan Law—Constitutional Law", 12 Wayne L Rev 84, 93 (1965). We cannot make this same conclusion. This is especially true where the federal government would pay 90% of any relocation expenses imposed on the renewal project.

erty" for which compensation must be paid to include:

"Lands, buildings, improvements, land under water, waterfront property, and any and all easements, franchises and hereditaments, corporeal or incorporeal, and every estate, interest, privilege, easement, franchise and right therein, or appurtenant thereto, legal or equitable, including rights of way, terms for years, and liens, charges, or incumbrances by mortgage, judgment, or otherwise."

We find that Michigan Bell's interests lie within the definition of real property thus delimited by the legislature. The legislature included every interest and it is not disputed in this state that upon acquisition and exercise of a franchise by a utility it becomes a vested property right. *City of Detroit v. Michigan Bell Telephone Company* (1965), 374 Mich 543, 552, 563; *City of Niles* v. *Michigan Gas & Electric Co.* (1935), 273 Mich 255. In addition in Section 4(e)(ii),[7] most recently before the legislature of 1969, the development plan in its designation of costs contemplated may include the cost of "locating or relocating water mains, sewers, or other public or *private utilities."* (Emphasis added.)

Consequently, it appears that the legislature has expressly excepted utilities from the common law development necessarily subordinating utilities' rights to the police power of the municipality. When this occurs, we should properly look to the expression of legislative intention rather than the common law in defining the rights of the parties. *Mayor and City Council of Baltimore* v. *Baltimore Gas & Electric Company* (1959) 221 Md 94, 156 A2d 447; *City of Baltimore* v. *Baltimore Gas &*

---

[7] CL 1948, § 125.74, as amended by PA 1969, No 173 § 4(e)(ii) [Stat Ann 1970 Cum Supp § 5.3504 § 4(e)(ii)].

*Electric Company* (1963), 232 Md 123, 192 A2d 87 (no compensable right since no legislative authorization).

Nothing in this opinion should be construed as an attempt to alter the common law right of the city to subordinate the utility's interest to an exercise of the police power in any other setting than urban renewal. It is because of the expressed legislative intention and the nature of urban renewal that this exception has been established. Reversed and remanded to the trial court for a determination as to the amount of compensation which should be awarded.

All concurred.