CITY OF CENTER LINE *v* MICHIGAN BELL
TELEPHONE COMPANY

OPINION OF THE COURT

1. EMINENT DOMAIN—BLIGHTED AREAS—REHABILITATION—MUNICI-
PAL CORPORATIONS—GENERAL WELFARE.

Property is acquired, pursuant to the provisions of the rehabili-
tation of blighted areas act, not for the purpose of redevelop-
ment at a profit to the city or private developer, but to
protect the health, safety, morals and general welfare of
the municipality (MCLA 125.71 *et seq.*).

2. EMINENT DOMAIN—BLIGHTED AREAS—MUNICIPAL CORPORATIONS—
URBAN RENEWAL.

The whole tenor of the rehabilitation of blighted areas act is
for the city to acquire private interests through purchase
(MCLA 125.71 *et seq.*).

3. EMINENT DOMAIN—BLIGHTED AREAS—MUNICIPAL CORPORATIONS—
UTILITIES—URBAN RENEWAL—COMPENSATION.

The rehabilitation of blighted areas act requires that the city
reimburse a utility for costs for removal and relocation of
its equipment necessitated by the implementation of an
urban renewal plan under the act (MCLA 125.71 *et seq.*).

CONCURRING OPINION

BLACK, J.

4. EMINENT DOMAIN—MUNICIPAL CORPORATIONS—UTILITIES—URBAN
RENEWAL—POLICE POWER.

*A utility company should be compensated by a city for re-*
*location expenses made necessary by urban renewal projects*
*for two reasons: first, where the condemned land is transferred*
*to a private concern for development, the failure to com-*

REFERENCE FOR POINTS IN HEADNOTES
[1-9] 27 Am Jur 2d, Eminent Domain §§ 32, 42, 120.

pensate the utility company for relocation expenses amounts
to an imposition of substantial damages on one private cor-
poration which inures to the benefit of another private cor-
poration; secondly, it is inappropriate for the utility's users,
who must bear the ultimate burden of relocation costs imposed
on the utility, to alone pay for a socially-oriented program
operating under the guise of the police power—such a burden
should be borne by the general taxpaying public.

5. TELECOMMUNICATIONS — REAL PROPERTY — REHABILITATION OF
BLIGHTED AREAS ACT — FRANCHISE — VESTED PROPERTY RIGHT —
STATUTES — LEGISLATIVE INTENTION.

    *A telephone company's interests lie within the definition of
real property thus delimited by the legislature in the rehabili-
tation of blighted areas act because the legislature included
every interest and it is not disputed in this state that upon
acquisition and exercise of a franchise by a utility it becomes
a vested property right; consequently, it appears that the
legislature has expressly excepted utilities from the common
law development necessarily subordinating utilities' rights
to the police power of the municipality and, when this occurs,
an appellate court should properly look to the expression of
legislative intention rather than the common law in defining
the rights of the parties (MCLA 125.72[e]).*

6. EMINENT DOMAIN—MUNICIPAL CORPORATIONS—TELECOMMUNICA-
TIONS—PROPERTY INTERESTS.

    *A city had no authority, under the rehabilitation of blighted
areas act or otherwise, to take a telephone company's prop-
erty interests without paying just compensation therefor
(MCLA 125.73).*

DISSENTING OPINION
ADAMS AND SWAINSON, JJ.

7. EMINENT DOMAIN—TELECOMMUNICATIONS—UTILITIES—BLIGHTED
AREAS—URBAN RENEWAL—MUNICIPAL CORPORATIONS—PROPERTY.

    *A city, in condemnation proceedings to acquire property for
urban renewal under the rehabilitation of blighted areas act,
should not be required to pay a telephone company for the
cost of relocating its utility lines because the telephone com-
pany, which acquired the right to run its lines pursuant to
statute and pays no taxes on this property, had no property
taken for which compensation was required (MCLA 125.71
et seq., 484.4).*

8. TELECOMMUNICATIONS—UTILITIES—RELOCATION OF UTILITY LINES.
   *A telephone company has a right under Michigan law to recover
   all costs of doing business, plus a reasonable profit; the cost
   of relocating its lines would be considered a cost of doing
   business, hence, the telephone company will be able to recover
   these costs through its rate structure.*

9. EMINENT DOMAIN — STATUTES — REHABILITATION OF BLIGHTED
   AREAS ACT — MUNICIPAL CORPORATIONS — UTILITIES — COMPEN-
   SATION.
   *Provision in the rehabilitation of blighted areas act that the
   "plan shall designate the location, extent, character and esti-
   mated cost of the improvements contemplated for the area;
   and may include any or all of the following improvements"
   grants the municipality an option as to what area to include
   under that act and it has the power not to include the re-
   location costs of a telephone company in its plan without pay-
   ing compensation to the telephone company (MCLA 125.74[2]
   [e] [ii]).*

Appeal from Court of Appeals, Division 2, Dan-
hof, P. J., and V. J. Brennan and J. J. Kelley, Jr.,
JJ., reversing and remanding Macomb, Howard R.
Carroll, J. Submitted September 14, 1971. (No. 36
June Term 1971, Docket No. 53,061.) Decided April
6, 1972.

26 Mich App 659 affirmed.

Condemnation proceedings by City of Center Line.
Michigan Bell Telephone Company moved to inter-
vene in order to protect its property rights in streets
and alleys located within the condemned area. Mo-
tion denied. Michigan Bell Telephone Company
appealed to the Court of Appeals. Reversed and
remanded. Plaintiff appeals. Affirmed.

*Roy W. Rogensues,* for plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *A. Hil-
liard Williams, John L. Vanker, Jr.,* and *Robert M.*

*Vercruysse*), and *James M. Smith, Donald E. Brown,* and *Mary M. Conrad,* for intervenor Michigan Bell Telephone Company.

*Amicus Curiae: Robert E. Butcher,* for City of Lincoln Park.

T. G. KAVANAGH, J.   This suit involves the question of a public utility's right to reimbursement costs in relocating its equipment in connection with an urban renewal project.

The City of Center Line began condemnation proceedings to acquire property for urban renewal pursuant to the provisions of MCLA 125.71 *et seq.;* MSA 5.3501 *et seq.* the rehabilitation of blighted areas (RBA) act.   Michigan Bell's petition to intervene in the proceedings was denied by the trial judge, but the Court of Appeals reversed* and remanded for determination of Michigan Bell's damages.

Because the precise question was a matter of first impression we granted leave to speak to the issue.

The claim of Michigan Bell is that by virtue of its franchise it has an irrevocable contract right to use the highways of the state which may not be impaired under the provisions of US Const, art I, § 10, and Const 1963, art 1, § 10 nor taken away without payment of just compensation under the provisions of the US Const, Am XIV, § 1 and Const 1963, art 1, § 17, and art 10, § 2.

The City of Center Line maintains that whatever property rights Michigan Bell may have in the affected city streets, they are subject to the regulation by the city under the police power of the state, and

---

* *Center Line* v *Michigan Bell Telephone Co,* 26 Mich App 659 (1970).

that no taking is involved here which entitles Michigan Bell to reimbursement.

The Court of Appeals noted the "multitude of decisions from other jurisdictions" holding a utility company had no compensable right under facts similar to those presented here. It cited:

*"County of Santa Barbara* v. *United States* (CD Cal, 1967), 269 F Supp 855; *City of Wichita* v. *Kansas Gas & Electric Company* (1970), 204 Kan 546, 464 P2d 196; *Consolidated Edison of New York* v. *John Lindsay as Mayor* (1964), 24 NY2d 309 (300 NYS 2d 321) ; *New York Telephone Company* v. *City of Binghamton* (1966), 18 NY2d 152 (272 NYS2d 359 (219 NE2d 184) ; *State Highway Commission* v. *Clackamas Water District* (1967), 247 Ore 216, 428 P2d 395; *Western Union Telegraph Company* v. *Tarrant County* (Tex Civ App, 1970), 450 SW2d 763."

The Court held, however, that for two reasons Michigan Bell is entitled to reimbursement: 1) the development of the property acquired would be by a private developer who would otherwise benefit by the utility company's loss, and 2) since urban renewal is a "socially orientated program operating under the guise of the police power" the burden of its costs should be borne by the general taxpaying public, and unless the utility be reimbursed by the condemning authority, the rate paying users of the utility will ultimately bear the cost.

We are not persuaded by the first reason.

In *In re Slum Clearance,* 331 Mich 714 (1951), it was claimed that the condemnation proceedings for slum clearance was unconstitutional because the real estate, while taken for a public use, is, after objectionable buildings are razed, to be sold for redevelopment by private persons and that, considering the purposes of the condemnation as a whole, the pro-

posed action is improper and unconstitutional, as condemning the lands of one private person to be devoted to the uses and purposes of another.

This Court held the slum clearance act constitutional saying (p 720):

"It seems to us that the public purpose of slum clearance is in any event the one *controlling* purpose of the condemnation. The jury were not asked to decide any necessity to condemn the parcels involved for any purpose of resale, but only for slum clearance. * * *

"In the instant case, the resale [abating part of the cost of clearance] is not a primary purpose and is incidental and ancillary to the primary and real purpose of clearance. Reconstruction was asked for in the petition and resale is necessary for such purpose, but the resale is not for the purpose of enabling the city nor any private owner to make a profit." (Emphasis supplied.)

The same reasoning applies here. The *controlling* purpose of the city's plan is to rehabilitate a blighted area. The property is acquired, not for the purpose of redevelopment at a profit to the city or any private developer, but to protect the health, safety, morals and general welfare of the municipality.

Since the controlling purpose is a public use, the circumstance of a private developer's benefit would not change its character.

The second reason is sound, although its expression may be unfelicitous. Whether it is "inappropriate" for the rate payers to pay these costs or whether they "should" be borne by the general taxpaying public are legislative rather than judicial judgments.

The conclusion that the legislature did so determine however, is inescapable from a fair reading of the RBA act.

The whole tenor of the act is for the city to acquire private interests through purchase. The inclusion in the definition or real property in section 2(e) of "every estate, interest, *privilege, easement*" and the direction to the city to acquire such real property in section 5 obviates the constitutional question of whether it is necessary to reimburse a utility for relocation costs when a public use entails the removal and relocation of equipment. (Emphasis added.)

We hold that the RBA act requires that the city reimburse a utility for costs for removal and relocation of its equipment necessitated by the implementation of an urban renewal plan under the act.

No costs, a public question.

T. M. Kavanagh, C. J., and T. E. Brennan and Williams, JJ., concurred with T. G. Kavanagh, J.

Black, J. (*concurring*). My considered view is that Division 2 was right in its determination of *both* points made by Judge Danhof, for the panel (26 Mich App 659).

The Judge's review of the two points starts on page 661 of his Court's report. To me, it reasons with due judicial vigilance in keeping the ever indispensably leashed police power within constitutional bounds, and in concluding that the real issue before it and now here is one of ascertainment of the pertinent legislative purpose; referring to 1945 PA 344 (MCLA 125.71 *et seq.*; MSA 5.3501 *et seq.*) as that statute stood when Center Line instituted this low rent housing project.

Judge Danhof's opinion correctly construed the definition of "Real property," found in section 2(e) of the act of 1945. That being true, I suggest respectfully that Center Line had no authority, under section 3 of the act of 1945 or otherwise, to take

Michigan Bell's property interests without paying just compensation therefor.

As I read the Court's instant opinion it stands for affirmance of the judgment of the Court of Appeals. I therefore concur.

SWAINSON, J. (*dissenting*).   I dissent from the conclusion that the City of Center Line, in this matter, is required to pay Michigan Bell Telephone Company for the cost of relocating its utility lines. I do not believe that Michigan Bell had property taken for which compensation was required. Michigan Bell acquired the right to run its lines pursuant to MCLA 484.4; MSA 22.1414. It pays no taxes on this property, and it is difficult to understand of what compensable interest it is being deprived. If Michigan Bell does have a compensable property right, then it should be taxed pursuant to Const 1963, art 9, § 5.[1]

Michigan Bell has a right under Michigan law to recover all costs of doing business, plus a reasonable profit. The cost of relocation of its lines would be considered a cost of doing business. Hence, Michigan Bell will be able to recover these costs through its rate structure.

I believe that MCLA 125.74(2)(e)(ii); MSA 5-.3504(2)(e)(ii), which provides:

---

[1] "The legislature shall provide for the assessment by the state of the property of those public service businesses assessed by the state at the date this constitution becomes effective, and of other property as designated by the legislature, and for the imposition and collection of taxes thereon. Property assessed by the state shall be assessed at the same proportion of its true cash value as the legislature shall specify for property subject to general ad valorem taxation. The rate of taxation on such property shall be the average rate levied upon other property in this state under the general ad valorem tax law, or, if the legislature provides, the rate of tax applicable to the property of each business enterprise assessed by the state shall be the average rate of ad valorem taxation levied upon other property in all counties in which any of such property is situated."

"The plan shall designate the location, extent, character and estimated cost of the improvements contemplated for the area; and *may* include any or all of the following improvements   *   *   *   " (emphasis added),

grants the municipality an option as to what area to include under the blighted area rehabilitation act. The City of Center Line chose not to include the relocation costs of Michigan Bell in its plan and, I believe, under the weight of authority it has the power to do this without paying compensation to Michigan Bell Telephone Company.[2]

Adams, J., concurred with Swainson, J.

---

[2] *Santa Barbara County* v *United States,* 269 F Supp 855 (CD Cal, 1967); *City of Wichita* v *Kansas Gas & Electric Co,* 204 Kan 546; 464 P2d 196 (1970); *Consolidated Edison Company of New York, Inc* v *Lindsay,* 24 NY2d 309; 300 NYS2d 321; 248 NE2d 150 (1969); *New York Telephone Co* v *City of Binghamton,* 18 NY2d 152; 272 NYS2d 359; 219 NE2d 184 (1966); *State Highway Commission* v *Clackamas Water District,* 247 Or 216; 428 P2d 395 (1967); *Western Union Telegraph Co* v *Tarrant County,* 450 SW2d 763 (Tex Civ App, 1970).