SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY v. THE HOUS-
ING AUTHORITY OF THE CITY OF RALEIGH

No. 7710SC942

(Filed 3 October 1978)

1. Municipal Corporations § 4.5— urban redevelopment—costs of relocating
   telephone lines
      An urban redevelopment commission was not required by G.S. Ch. 160A
   to reimburse a telephone company for the costs of removing and relocating
   telephone lines from an area being redeveloped since (1) the forced relocation
   of the telephone lines was not a taking within the purview of G.S. 160A-512(6),
   and (2) the relocation expenses were not expenditures which were necessary to
   carry out redevelopment purposes within the meaning of G.S. 160A-512(11).

2. Municipal Corporations § 33— closing of city street
      City streets upon which a telephone company's facilities were located
   were closed for an urban redevelopment project by a lawful exercise of the
   police power since the redevelopment commission had the power to take
   streets by eminent domain with the city's consent, G.S. 160A-512(4), G.S.
   160A-515, and the streets were in fact closed by the city in the exercise of
   power the city clearly possessed.

APPEAL by plaintiff from *Graham, Judge*. Judgment entered
26 July 1977, in Superior Court, WAKE County. Heard in the
Court of Appeals 23 August 1978.

This is a declaratory judgment action to determine whether
an urban redevelopment commission under Chapter 160A of the
General Statutes must reimburse the telephone company for the
costs of removing and relocating telephone lines from an area be-
ing redeveloped.

The parties have stipulated the facts: The Housing Authority
of the City of Raleigh is an Urban Redevelopment Commission
under the provisions of Article 22, Chapter 160A of the General
Statutes. In the Spring of 1975 it was engaged in a federally
assisted slum clearance and redevelopment program in an area on
the south side of Raleigh. Southern Bell had various telephone
poles, lines and other facilities within the public streets of that
area. The Authority demanded that Southern Bell remove its
facilities from the project area; Southern Bell claimed that it was
entitled to reimbursement for the reasonable non-betterment
relocation costs it would incur. On 9 June 1975 the parties signed

a nonprejudice relocation agreement, by which Southern Bell agreed to accede to the demands while reserving its right to seek compensation and the Authority reserved its right to deny the reimbursement claims. Relying on the agreement, Southern Bell removed and relocated its facilities, incurring reasonable non-betterment costs of $3,971.15. Southern Bell submitted its statement for these expenses and the Authority declined to pay.

The parties now join in seeking a declaratory judgment of their rights and liabilities.

*Emanuel & Thompson, by Robert L. Emanuel, for plaintiff appellant.*

*Hatch, Little, Bunn, Jones, Few & Berry, by Harold W. Berry, Jr., for defendant appellee.*

ARNOLD, Judge.

[1] Chapter 160A, Art. 22 of the General Statutes is North Carolina's Urban Redevelopment Law. The Housing Authority of the City of Raleigh is governed by Chapter 160A in its exercise of the powers of a redevelopment commission pursuant to § 160A-505(d). The primary question here is whether the Urban Redevelopment Law mandates reimbursement to privately-owned public utility companies which must relocate their facilities in order to accommodate urban redevelopment projects. Southern Bell argues that the provisions of Chapter 160A require that it be reimbursed; the Housing Authority argues that there is no statutory authority for reimbursement of relocation expenses.

The case is one of first impression in North Carolina. A number of states have decided similar cases, but as the question is invariably one of statutory interpretation the decisions of other jurisdictions are of limited assistance.

At common law, public utilities could be required to remove or relocate their facilities at their own expense from public streets when it was necessary for public use and convenience. 39A C.J.S. § 139c, Highways. This is still the rule in the absence of express statutory provisions to the contrary. *Id.* We must determine whether the pertinent provisions of Chapter 160A amount to such express statutory authority.

Sec. 160A-501 enumerates the policy and purposes of the redevelopment law, then continues: "Such purposes are hereby declared to be public uses for which public money may be spent, and private property may be acquired by the exercise of the power of eminent domain." Sec. 160A-512 gives a redevelopment commission power "(6) . . . to purchase, . . . acquire by . . . eminent domain or otherwise, any real or personal property or any interest therein, . . . necessary or incidental to a redevelopment project;" and "(11) [t]o make such expenditures as may be necessary to. carry out the purposes of this Article; and to make expenditures from funds obtained from the federal government. . . ." From these provisions it appears that reimbursement might be authorized in one of two ways: as compensation for an eminent domain taking under § 160A-512(6), or as an expenditure "necessary to carry out the purposes of this Article" under § 160A-512(11).

The eminent domain power given to a redevelopment commission by §§ 160A-501 and -512(6) applies to the property of "a corporation possessing the power of eminent domain under Chapter 40," N.C. G.S. § 160A-515, and Southern Bell is such a corporation, N.C. G.S. § 40-2(1). In addition, § 160A-515 provides for condemnation of property already devoted to another public use. Thus, it is clear that the legislature has made a policy decision to allow a public utility, such as Southern Bell, to receive compensation for any of its real or personal property taken by eminent domain. However, we do not believe that this forced relocation of Southern Bell's facilities was a compensable taking.

We recognize that the property itself need not be taken in order for there to be a compensable taking. 29A C.J.S. § 110, Eminent Domain. Nevertheless, "taking" means the taking of something, whether it is the actual physical property or merely the right of ownership, use or enjoyment. *Id.* Sec. 160A-512 (6), providing for eminent domain to apply to "any real or personal property or any interest therein," also provides for the taking of at least an interest before compensation is required. We find that no property or interest of Southern Bell's has been "taken." The situation instead is closely analogous to those decided North Carolina cases which hold that where a leasehold is condemned the tenant's cost of moving his business to a new location is not compensable. *See, e.g., Williams v. State Hwy. Commission,* 252

N.C. 141, 113 S.E. 2d 263 (1960); *City of King's Mountain v. Cline*, 19 N.C. App. 9, 198 S.E. 2d 64 (1973). It does not appear in the record what interest Southern Bell had, if any, in the land upon which its facilities were located. But even if it had some compensable interest in the land which was taken for the redevelopment project, the forced relocation of its facilities is no different, in the context of eminent domain, than the forced relocation of the business of a private tenant after condemnation. And "[i]n North Carolina the taking of land does not contemplate compensation for . . . cost in moving a business and its attendant personal property to another location." *City of King's Mountain v. Cline, supra* at 12, 198 S.E. 2d at 66.

Having determined that the cost of relocating Southern Bell's facilities should not be reimbursed as a taking under eminent domain, we now must consider whether § 160A-512(11) is sufficient statutory authority for reimbursement. The wording of the statute, giving a redevelopment commission power "[t]o make such expenditures as may be necessary to carry out the purposes of this Article," is not at all definite. In the absence of North Carolina law on this point, the parties bring to our attention cases from other states. Two of the cases cited, *City of Columbus v. Indiana Bell*, 152 Ind. A. 22, 281 N.E. 2d 510 (1972), and *Mayor & City Council of Baltimore v. Baltimore Gas & Electric Co.*, 221 Md. 94, 156 A. 2d 447 (1959), are not particularly helpful because the statutes being construed there were much more explicit. In the Indiana case, the statute authorized payment to business concerns for moving expenses and losses of property not otherwise reimbursed. In the Maryland case a city ordinance expressly authorized payment of relocation expenses to utilities. Two other cases cited to us, *Vermont Gas System, Inc. v. City of Burlington*, 130 Vt. 75, 286 A. 2d 275 (1971) (rehearing denied 1972), and *City of Center Line v. Michigan Bell*, 387 Mich. 260, 196 N.W. 2d 144 (1972), were based on applications of the eminent domain portions of the respective statutes and findings that the property taken was within the statutory definitions of real property. It is not necessary for us to reach the question of whether Southern Bell's facilities were "structures" within the North Carolina definition of real property, N.C. G.S. § 160A-503(13), since our legislature has given the redevelopment commission eminent domain power over both real and personal property, N.C. G.S. § 160A-512(6), and

we have already decided that such eminent domain power is not the necessary statutory authority for reimbursement here.

The Urban Redevelopment Law contained in Chapter 160A does authorize expenditures which are necessary to carry out redevelopment purposes. We cannot hold Southern Bell's relocation expenses to be "necessary expenditures," however, since at common law no such reimbursement was required. Moreover, we find no expression of legislative intent by the General Assembly that relocation expenses should be compensable. Indeed, the overwhelming probability is that the issue of relocation expenses incurred by a utility never received legislative consideration.

The cases cited from both Vermont and Michigan contain rationale that may be a desirable policy, namely, that the burden of relocation costs to the utility should be borne by the taxpayers. The Michigan Court of Appeals in its opinion in *City of Center Line v. Michigan Bell*, 26 Mich. App. 659, 662, 182 N.W. 2d 769, 771 (1970), felt that "it is inappropriate for the utility's users . . . to alone pay for a socially-oriented program operating under the guise of the police power. Such a burden should be borne by the general taxpaying public." The Michigan Supreme Court, however, in its review of the case, recognized, as we do, that while the reasoning is sound, "its expression may be unfelicitous. Whether it is 'inappropriate' for the rate payers to pay these costs or whether they 'should' be borne by the general taxpaying public are legislative rather than judicial judgments." *City of Center Line v. Michigan Bell*, 387 Mich. 260, 265, 196 N.W. 2d 144, 146 (1972). We find that the North Carolina Urban Redevelopment Law does not require reimbursement to Southern Bell for its relocation expenses. There are cases from other jurisdictions which lend support to our holding. *E.g., Pacific Telephone and Telegraph Co. v. Redevelopment Agency*, 75 Cal. App. 3rd 957, 142 Cal. Rptr. 584 (1977); also, *Appalachian Power Co. v. City of Huntington*, 210 S.E. 2d 471 (W.Va. App. 1974); *Consolidated Edison of New York v. Lindsay*, 24 N.Y. 2d 309, 300 N.Y.S. 2d 321, 248 N.E. 2d 150 (1969); *Bristol Tennessee Housing Authority v. Bristol Gas Corp.*, 219 Tenn. 194, 407 S.W. 2d 681 (1966). We leave it to the General Assembly to express clearly its intent, if it exists, that privately owned public utilities be reimbursed for relocation expenses incurred due to urban redevelopment projects.

Telegraph Co. v. Housing Authority

[2] In its second assignment of error, Southern Bell argues at length that the trial court erred in its conclusion of law that the City of Raleigh had delegated to the Housing Authority its power to close public streets. We agree that the trial court's finding was in error, but we still do not reach the conclusion Southern Bell would have us reach.

In exercising the powers of a redevelopment commission, the Housing Authority of the City of Raleigh was governed by Chapter 160A. N.C. G.S. § 160A-505(d). By designating its housing authority to deal with urban redevelopment, the City of Raleigh was not delegating its own powers but was merely "filling in the blank," designating which body should exercise the urban redevelopment powers set out by the legislature. However, the fact that Raleigh did not delegate its police power to close public streets does not mean that the Housing Authority lacked that power. Under Chapter 160A, the Housing Authority had power to take public streets by eminent domain with Raleigh's consent, see § 160A-515, and to carry out redevelopment projects, § 160A-512 (4), which included "removal of existing . . . streets, utilities or other improvements." § 160A-503(19)(b). And, in fact, the street closing here was not done by the Housing Authority, but by the City of Raleigh, in an exercise of power the City clearly possessed.

Having found that the streets upon which Southern Bell's facilities were located were closed by a lawful exercise of police power, and that North Carolina's urban redevelopment law does not authorize reimbursement for a utility's relocation expenses in this context, we find it unnecessary to consider whether Southern Bell's billing to the City of Raleigh was appropriately calculated.

The decision of the trial court is

Affirmed.

Chief Judge BROCK and Judge MARTIN (Robert M.) concur.