**CONSUMERS POWER CO., Plaintiff,**

**v.**

**Douglas M. COSTLE, Administrator of the U. S. Environmental Protection Agency, Defendant.**

**Civ. No. 78–72481.**

United States District Court,
E. D. Michigan, S. D.

March 30, 1979.

Lawrence B. Lindemer, William E. Wisner, Jack D. Shumate, Jackson, Mich., Consumers Power Co., for plaintiff.

Lee DeHihns, III, Gen. Counsel, EPA, Washington, D. C., Elizabeth Stein, U. S. Dept. of Justice, Kenneth R. Fitzpatrick, Asst. U. S. Atty., Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

CORNELIA G. KENNEDY, Chief Judge.

Plaintiff, a gas and electric utility company, filed this action for declaratory and injunctive relief against the defendant in his official capacity as Administrator of the United States Environmental Protection Agency. Plaintiff alleges that as a result of sewage projects in Flint, Bay City, and Jackson, Michigan, financed by grants allocated under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1281–1297, it has been required to replace its gas mains. Plaintiff contends that it is entitled to relief under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. §§ 4601–4655, for the costs it incurs in replacing its mains in that it is a displaced person within the meaning of the act. In Count I, the plaintiff alleges that the defendant did not receive satisfactory assurances from the cities that fair compensation would be paid to the plaintiff, in violation of 42 U.S.C. § 4655. This, it alleges, has resulted and will result in the plaintiff's bearing an inequitable proportion of the costs resulting from a program designed for the benefit of the public as a whole. In Count II, the plaintiff similarly alleges a failure by defendant to require satisfactory assurances from the grantee cities as required by § 4630. The relief sought in Counts I and II is a declaratory judgment finding it unlawful for the defendant to provide financial aid without receiving satisfactory assurances; that plaintiff be granted a speedy hearing; and that it receive attorney's fees and expenses. In Count III, plaintiff alleges that it will suffer irreparable harm from the actions of the defendant and asks this Court to grant it injunctive relief and a speedy hearing.

The city of Bay City has asked that it be allowed to intervene in this action as a necessary party, and the defendant has concurred in the necessity of Bay City's joinder.

Defendant, EPA, has moved to dismiss the complaint stating that the plaintiff is without standing and its complaint therefore does not state a cause of action upon which relief may be granted. The defendant essentially advances three grounds in support of its motion. It asserts first, that there has been no acquisition of any property interest and thus the plaintiff is not a displaced person within the meaning of the act. Second, the act creates no new property rights, and the plaintiff has no claim to reimbursement outside the act. Finally, the defendant contends that this claim is not yet ripe for judicial review since there

has been no final agency action. The plaintiff opposes each of these contentions. Its positions are supported by amicus briefs of the Brooklyn Union Gas Company and the American Gas Association.

### I. Acquisition of Real Property

The Uniform Relocation Assistance Act, 42 U.S.C. §§ 4601–4655, provides financial relief to persons, including corporations, injured by the acquisition of real property by a state or federal agency using federal funds. The language of the act makes it clear that it applies only in cases in which there has been an acquisition of property. *Moorer v. Department of Housing & Urban Development,* 561 F.2d 175, 178 (8th Cir. 1977); *Whitman v. Missouri State Highway Comm'n,* 400 F.Supp. 1050, 1067 (W.D.Mo. 1975). For example, subchapter II of the act makes benefits available to "displaced persons", defined in the act as persons required to move "as the result of the acquisition of such real property." § 4601(6); *see also* §§ 4622, 4625, and 4630. Subchapter III is entitled "Uniform Real Property Acquisition Policy," and every section in that subchapter is concerned with the consequences of the acquisition of property.

It is true that in some cases courts have construed the act to require relocation assistance even though the acquisition of real property was inadvertent, as, for example, in the case of a HUD mortgage default. *See Cole v. Harris,* 571 F.2d 590 (D.C.Cir. 1977). However, most courts require that the acquisition be pursuant to a conscious governmental decision to dislocate in order to find an entitlement to benefits. *See, e. g., Harris v. Lynn,* 555 F.2d 1357 (8th Cir. 1977), *affirming* 411 F.Supp. 692 (E.D.Mo. 1976); *Alexander v. United States Department of Housing & Urban Development,* 555 F.2d 166 (7th Cir. 1977); *Caramico v. Secretary of Housing and Urban Development,* 509 F.2d 694 (2nd Cir. 1974). Under either interpretation of the act, however, there must be an acquisition of property. Thus in order that plaintiff be entitled to relief under this act, it must first demonstrate that it has been damaged by the acquisition of real property in connection with a disbursement of federal funds.

It has been held, as the plaintiff argues, that a grant of the right to place and maintain pipes in a street is the grant of a property right. *See, e. g., Owensboro v. Cumberland Telephone & Telegraph Co.,* 230 U.S. 58, 65, 33 S.Ct. 988, 57 L.Ed. 1389 (1913). However, the utility, which normally acquires its easement through a gratuitous grant, does not thereby acquire a right to any specific location in which to lay its pipes. *New Orleans Gaslight Co. v. Drainage Comm'n of New Orleans,* 197 U.S. 453, 461, 25 S.Ct. 471, 49 L.Ed. 831 (1905). *Tennessee v. United States,* 256 F.2d 244, 258 (6th Cir. 1958). Thus, in the present case, although plaintiff has incurred and will incur costs as the result of the federal grants to the cities involved, it has not lost any property right, since it may still maintain its pipes in the same ground. *New Orleans Gaslight Co., supra,* 197 U.S. at 460, 25 S.Ct. 471; *Detroit v. Michigan Bell Telephone Co.,* 374 Mich. 543, 554–55, 132 N.W.2d 660 (1965) (dissent), *cert. denied,* 382 U.S. 107, 86 S.Ct. 256, 15 L.Ed.2d 191 (1965); *cf. Center Line v. Michigan Bell Telephone Co.,* 387 Mich. 260, 196 N.W.2d 144 (1972) (reimbursement dependent upon specific legislative provision). It certainly cannot be argued that the cities of Flint, Jackson, and Bay City have now acquired the right to lay gas pipeline or that they have taken that right from the plaintiff. In *Detroit Board of Education v. Michigan Bell Telephone Co.,* 51 Mich.App. 488, 502, 215 N.W.2d 704, 711 (1974), *aff'd,* 395 Mich. 1, 232 N.W.2d 633 (1975), the Michigan Court of Appeals noted: "A distinction can be drawn between the shift of equipment to accommodate a drainage system and the total extinguishment of a vested property right." *See generally Center Line v. Michigan Bell Telephone Co., supra* (right of reimbursement resulting from legislative provision in Rehabilitation of Blighted Areas Act; no common law right). The cost of relocation is not the acquisition of a property right but rather the cost of doing business. *Center Line, supra,* 387 Mich. at 267, 196 N.W.2d 144 (Swainson, J., dissenting).

## II. *Creation of Rights by the URA*

Plaintiff has urged that it is unfair to impose on its gas customers, which represent only a portion of the communities involved and the great majority of which are not from the communities benefited from the sewer projects, the costs of gas main relocation resulting from sewers which benefit a discrete area and that it was this type of unfairness which Congress sought to remedy by the Uniform Relocation Assistance and Real Property Acquisition Policies Act. Admittedly the purpose of this act is to make benefits available to displaced persons required to move as the result of the acquisition of real property. This Court is however, limited by the provisions of the act. This argument must be addressed to the Congress.

The Uniform Relocation Assistance Act expressly states that it creates no new causes of action or property interests.

"The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."

42 U.S.C. § 4602(a).

"Nothing in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to January 2, 1971."

42 U.S.C. § 4602(b). Therefore, though a person may in fact be injured by governmental action, Congress has determined that not all injuries required the giving of assistance. *Beaird-Poulan Division v. Louisiana Department of Highways,* 441 F.Supp. 866, 872 (W.D.La.1977); *Parlane Sportswear Co. v. Weinberger,* 381 F.Supp. 410 (D.Mass.1974). In order to prove an entitlement to benefits, it is necessary to find that the plaintiff has a basis in law existing outside the act for its claim.

■ Although a utility does have a property interest in the exercise of its franchise, it has been held that the cost of moving or replacing equipment, even if caused by governmental action, must be borne by the utility. The easements granted to utilities are in trust for the public and not a grant of right to private individuals, *New Orleans Gaslight Co., supra,* 197 U.S. at 460, 25 S.Ct. 471; *Detroit Edison Co. v. Detroit,* 332 Mich. 348, 352–53, 51 N.W.2d 245 (1952).

The construction and maintenance of all such  .  .  .   conduits  .  .  . and like structures shall be subject to the paramount right of the public to use such public places  .  .  .   and shall not interfere with other public uses thereof .  .  .. Nor shall anything in this section or sections [247.183 and 247.184] be construed to grant any rights whatsoever to any public utilities  .  .  .   whatsoever, nor to impair otherwise any existing laws of this state, but shall be construed as a regulation of all such rights.

Mich.Comp.L.Ann. § 247.185; *see also* Mich. Const. art. 7, § 29.

■■ The maintenance of a sewage system is the exercise of a governmental function, as an aspect of the state's police power providing for the health and welfare of its citizens. *Perry v. Kalamazoo State Hospital,* 404 Mich. 205, 273 N.W.2d 421 (1978); *Thomas v. State Highway Dept.,* 398 Mich. 1, 21, 247 N.W.2d 530 (1976) (dissent). The displacement caused by repair and improvement of the sewage system is a consequence of the exercise of a governmental function and thus not compensable. Since no property right was lost and none acquired, the plaintiff is not a displaced person entitled to benefits under the Uniform Relocation Assistance Act. There was then no duty imposed upon the cities to have given assurances that the plaintiff would be reimbursed.

Plaintiff urges that its rights to lay gas mains in the cities involved, granted as they were under the Gas Companies Act of 1955 (Act 109 of 1955); Act 232 of 1903; and Act 264 of 1905, are superior to those later granted to utilities by municipalities. Plaintiff was granted perpetual franchises. Notwithstanding their perpetual nature, the franchises are still just that, the right to lay mains and provide gas or electric services. No act of the cities involved has

"acquired" these rights. Plaintiff continues to own its franchises and easements and its right and ability to place its pipes in the same land in which it could before the current projects.

### III. *Ripeness*

██ In order to have a right to judicial review of agency action, one must be a party aggrieved within the meaning of a relevant statute, 5 U.S.C. § 702, except to the extent that the statute precludes judicial review, 5 U.S.C. § 701(a)(1). The Uniform Relocation Assistance Act makes it very clear that Congress intended to set forth guidelines rather than to create rights of the sort giving rise to a legal cause of action. The act states:

> In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices, heads of Federal agencies shall to the greatest extent practicable, be guided by the following policies.

42 U.S.C. § 4651. *See also Paramount Farms, Inc. v. Morton,* 527 F.2d 1301, 1304–05 (7th Cir. 1975); *Nelson v. Brinegar,* 420 F.Supp. 975, 978 (E.D.Wis.1976). Subchapter II states that it is the purpose of the subchapter "to establish a uniform policy for the fair and equitable treatment of persons displaced . . . ." 42 U.S.C. § 4621. As a result of this intention to provide guidelines which would not give rise to new legal rights, the committee chose to limit the availability of judicial review. [1970] U.S.Code Cong. & Admin. News 5850, 5854. The committee attempted to provide an alternate route for redress of grievances.

> The committee believes that this objective can be achieved by the clear language of the bill which makes relocation payments and assistance . . . matters of congressional policy and makes agency heads responsible for faithful exe-

cution. Section 213(b)(3) [§ 4633(b)(3)] provides an alternative to judicial review, by requiring the heads of Federal agencies to establish regulations and procedures that will assure any person aggrieved . . . may have his application reviewed by the head of the Federal agency having authority over the project; or in the case of a program receiving Federal financial assistance, by the head of the State agency.

*Id.* The plaintiff contends that judicial review is appropriate now, since even if it appeals to the head of the agency its claim will undoubtedly be denied. It bases this conclusion on defendant's position in this action. It may well be that plaintiff would be unsuccessful in its administrative appeal even though it will not be directing its appeal to defendant but rather to the state agency. The possibility of an adverse ruling however is not a basis to by-pass administrative review. The act provides that review of agency decisions is to be in the head of the state agency receiving federal funds in this case, 42 U.S.C. § 4633(b)(3). The Court may not infer a jurisdictional basis for this action in that any such basis would not be authorized by statute and would be in conflict with legislative intent. *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *Fillinger v. Cleveland Society for the Blind,* 587 F.2d 336 (6th Cir. 1978); *M. B. Guran Co. v. Akron,* 546 F.2d 201, 204 (6th Cir. 1976).

In addition to requiring review by the head of the federal agency, Congress further limited judicial review by creating no rights under § 4651. This bars review under the Administrative Procedure Act. "Secondly, if one has no rights under [that section] . . . an action against a state agency under [section 4651] does not 'arise under' the Constitution or laws of the United States within the meaning of § 1331(a) (1970)." *Barnhart v. Brinegar,* 362 F.Supp. 464, 472 (W.D.Mo.1973). Thus to permit review under § 4655, which requires that satisfactory assurances be given, would be to grant legal rights under § 4651 in violation of Congressional intent through a subterfuge.

In summary, the plaintiff has attempted to plead a right to judicial review of an agency decision. It is without standing to assert a claim based on subchapter III, §§ 4651–4655, through the limitations in § 4602, which states that those sections create no rights. The plaintiff is unable to point to any legal entitlement existing outside the act and is thus foreclosed from proceeding under subchapter III. The plaintiff is also precluded from stating a legal claim under subchapter II, §§ 4621–4638, since in order to qualify for benefits, it must have suffered injury as a result of the acquisition of its property by a governmental body using federal funds. No acquisition has taken place, and the plaintiff is therefore not a person aggrieved within the meaning of the statute.

The defendant's motion to dismiss for lack of jurisdiction is accordingly GRANTED. The motion of Bay City to intervene is DENIED as moot.