[No. 17087.   Department Two.   July 15, 1922.]

SCHOOL DISTRICT No. 176 OF KING COUNTY, *Respondent,*
v. A. N. SANFORD *et al., Appellants.*[1]

SCHOOLS AND SCHOOL DISTRICTS (21-1)—PROPERTY—SALE—POWERS OF BOARD—STATUTES—CONSTRUCTION. Under Rem. Comp. Stat., § 4808, providing that school districts of the first class, in selling school property of more than $2,000 in value, must sell for cash unless authorized by vote of the electors to sell on time, and Id., §§ 4819 and 4835, authorizing second and third class directors to sell property when directed by the vote of the district, without specifying how the sale could be made, a school district of the third class may sell otherwise than for cash; and as against a demurrer, an affirmative defense alleging that a third class district authorized a contract of sale and that the contract made was the one authorized, overcomes the presumption that mere authority "to sell" school property meant authority to sell for cash.

Appeal from a judgment of the superior court for King county, Smith, J., entered October 18, 1921, in

[1]Reported in 207 Pac. 1058.

favor of the plaintiff, upon sustaining a demurrer to the answer, in an action of ejectment. Reversed.

*E. C. Million,* for appellants.

*Malcolm Douglas* and *Arthur Schramm, Jr.,* for respondent.

MACKINTOSH, J.—Can a school district of the third-class sell real estate otherwise than for cash?

This is the question to be answered in this case, which arises from the sustaining of the demurrer to the affirmative defense of the appellants, who are being sued in ejectment. The affirmative defense pleads that the voters of the plaintiff school district "did decide to and did authorize the board of directors of plaintiff to enter into a contract for the sale of said property," and that thereafter, in pursuance of such election, the board of directors entered into a contract of purchase and sale.

Authority to sell does not of itself imply authority to sell on credit. The presumption is that the sale is to be for cash. *Winders v. Hill,* 141 N. C. 694, 54 S. E. 440. This presumption can be overcome in several ways, and if the act giving the authority can, when fairly read, show an intention of not confining the sales to cash, the presumption will be successfully met. Section 4808, Rem. Compiled Stat., relating to the sale by directors of first-class school districts, provides that, if the value of the property to be sold is less than $2,000, the directors may sell it on such terms as they may decide, but if the value is over that amount, the directors must be authorized by vote of the electors to sell, and that the "sale must be made for cash." Section 4819, Rem. Compiled Stat., governing sales by second-class districts, and § 4835, Rem. Compiled Stat., concerning sales by third-class districts,

are in all essentials the same, and provide that: "The board shall build or remove school-houses, purchase or sell lots or other real estate when directed by a vote of the district to do so." The section is silent as to what kind of sale may be authorized. Sales are of various kinds, and there is nothing in the statute which indicates that the legislature did not intend to authorize the directors of districts of the first and second-classes to either sell for cash or on terms, or to enter into any contract of sale that is known to the law. The fact that the legislature, in dealing with the question of the sale of property by school districts of the first-class, specifically provided that those sales which are authorized by the voters shall be for cash, and remained silent as to the sort of sales that can be authorized by the voters in second and third-class districts, would seem to indicate a recognition by the legislature not only that sales may be of different characters, but by restricting districts of the first-class to sales for cash, by implication have intended to allow the voters of the second and third-class districts to provide for sales upon credit, time, and so forth. In the case of *Washington-Oregon Corp. v. Chehalis,* 76 Wash. 442, 136 Pac. 681, this court said:

"If the statute required the bonds to be sold in any particular manner, no sale, unless in the manner provided in the statute, would be valid. But our statute contains no requirement of this character. It provides only for the sale of the bonds in such manner as the corporate authorities shall deem best, thus vesting in them a discretion as to the method of sale or disposal. Because the statute uses the word 'sale' does not necessarily imply that the bonds can only be disposed of for cash and the cash thus obtained paid to the contractor. Tiedeman, in his work on Sales, § 12, says:

" 'Although it has been sometimes held that the sale must be a *transfer for money,* and that every other transfer is an exchange or barter, the better opinion is that the transaction is still a sale, although the transfer is made for something else than money, provided each article is transferred at an agreed or market value, so that the one thing is received in payment of the price of the other.'

"In so far as this definition would make the contract between the city and the contractor a sale of the bonds because the bonds and the construction were exchanged at an agreed valuation, the bonds at their face value, and the construction at the price bid and accepted, it is supported by the authorities. A statute of New Jersey authorized township commissioners to issue and dispose of bonds in aid of railway construction at not less than par, and that the money so raised by any loan or sale of the bonds should be invested in bonds of the railway company. The commissioners, instead of selling the bonds and investing their proceeds in bonds of the railway company, exchanged them for a like amount of the railway company bonds, and it was held to be a compliance with the statute. *Montclair v. Ramsdell,* 107 U. S. 147. A like ruling was made in *Cady v. Watertown,* 18 Wis. 338, construing a statute authorizing the commissioners to negotiate the sale of bonds and use the proceeds in purchasing sites for schoolhouses and other purposes. The commissioners accepted a deed from Cady and delivered to him bonds in payment. It was contended that the commissioners, under the act, had no power to dispose of the bonds except by sale for cash. This contention was overruled, the court saying in its holding that there was nothing in the act which required the sale of the bonds for cash; that the exchange of them for school sites was a sale of them within the meaning of the law, and that it was not a departure from the power to negotiate a sale to pay for the property purchased in these securities without resorting to the idle ceremony of first selling the bonds for cash and then paying the money so received to the owner of the site. A third case in point is *O'Neill v. Yellowstone*

*Irr. Dist.*, 44 Mont. 492, 121 Pac. 283, where a statute providing for the issuance of bonds for an irrigation district declared that the bonds so issued should be sold. The court held that this imposed no restriction upon the district commissioners in exchanging the bonds for water rights, rights of way, etc., the court saying: '. . . an exchange of the bonds of the district for the property of the company at its cash value was a sale of them, the same as if they had been sold for cash, . . .' Other supporting authorities are: *Germania Sav. Bank v. Town of Darlington,* 50 S. C. 337, 27 S. E. 846; *Meyer v. Muscatine,* 1 Wall. 384; *Wiley v. Board of Education,* 11 Minn. 371; Harris, Municipal Bonds, n. 342; McQuillin, Municipal Corporations, § 2303.''

Had a vote of the people, as we have already indicated, merely given the board of directors authority to sell, the presumption would be that that vote would not have authorized the board to enter into a contract of sale such as that set out in the affirmative defense. In the case of *School District No. 6 v. Aetna Insurance Co.,* 62 Me. 330, it was decided, under such circumstances, "that a specific authority or direction to sell does not authorize a sale on credit." Under such circumstances, there would be no evidence overcoming the presumption that a cash sale only was authorized. The Maine case recognizes that proof of custom to the contrary or a ratification by the voters of the credit sale would have overcome the presumption and validated the sale. But the defense alleges that the vote was an authorization to enter into a contract of sale, and that the contract was the one authorized by the voters. The demurrer, of course, admits the truth of these allegations.

We therefore hold that the voters having authorized the making of the sale by contract, that the act of the board of directors in conformity with that direction

of the voters of the district was lawful, and the demurrer to the affirmative defense should not have been sustained.

The judgment is reversed, and the cause remanded to the trial court for further proceedings.

PARKER, C. J., MAIN, HOLCOMB, and HOVEY, JJ., concur.