BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF THE
CITY OF DETROIT v MICHIGAN BELL TELEPHONE COMPANY

1. MUNICIPAL CORPORATIONS—SCHOOLS AND SCHOOL DISTRICTS—POLICE
    POWERS—STATUTES.

    A board of education of a school district is a municipal corpora-
    tion possessing police powers pursuant to statute (MCLA
    340.192).

2. MUNICIPAL CORPORATIONS—SCHOOLS AND SCHOOL DISTRICTS—PUB-
    LIC UTILITIES—RELOCATION COSTS—COMPENSATION—VESTED
    PROPERTY RIGHT.

    Utility companies are entitled to be compensated for costs incur-
    red in relocation of utility equipment in accommodating a
    school district's building expansion program where plats and an
    alley were vacated because the utilities have acquired vested
    property rights to the vacated plats and an attempt to divest
    them is an unconstitutional taking for which compensation
    must be paid.

3. MUNICIPAL CORPORATIONS—PUBLIC UTILITIES—REGULATION OF
    PROPERTY RIGHTS—SCHOOLS AND SCHOOL DISTRICTS—POLICE
    POWERS—SOURCES OF POWERS.

    The regulation of the property right of public utilities to accom-
    modate the physical expansion of a school cannot categorically
    be considered an improper exercise of police power; however,
    municipal corporations, in the absence of a constitutional grant
    of power, have only such police powers as are granted them by
    the Legislature.

4. MUNICIPAL CORPORATIONS—AUTHORITY—POLICE POWERS—PUBLIC
    WELFARE.

    Action taken by a state or one of its municipal subdivisions,

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 68 Am Jur 2d, Schools §§ 50–52.
[2] 27 Am Jur 2d, Eminent Domain §§ 339, 340.
[3, 4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 193, 423 et seq.
[4, 6] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 230.

manifestly in the interest of its people as a whole, that does not abridge rights of individuals, and that is not within the inhibition of some constitutional or statutory provision, should be upheld as a valid exercise of authority, though lacking in any positive grant of power to support it.

5. SCHOOLS AND SCHOOL DISTRICTS—POLICE POWERS—ACQUISITION OF PROPERTY—PUBLIC WELFARE—STATUTES.

The proper exercise of police power under the general welfare clause of the statute providing for a school board's acquisition of property by purchase or eminent domain includes that which is necessarily and fairly implied in or incident to those powers expressly stated (MCLA 340.192).

6. SCHOOLS AND SCHOOL DISTRICTS—PUBLIC WELFARE—EXPANSION OF FACILITIES—PUBLIC UTILITIES—VACATION OF STREETS.

The legitimate public interest of a school district in enlarging educational facilities where properly established may be paramount to the continued right of usage by the utilities of the public streets and the latter must yield.

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 October 2, 1973, at Detroit. (Docket No. 14220.) Decided March 1, 1974. Leave to appeal granted, 392 Mich —.

In the matter of the petition of the Board of Education of the School District of the City of Detroit for the vacation of certain plats and an alley to permit construction of an addition to a school, the Michigan Bell Telephone Company and the Detroit Edison Company sought compensation for relocation of their public utilities installations. The final order of vacation directed payment of compensation. Plaintiff appeals. Affirmed.

*Riley & Roumell* (by *K. Paul Zosel*), for plaintiff.

*Hyman & Rice* (by *John L. Vander, Jr.*), for defendant Michigan Bell Telephone Company.

*Fischer, Franklin & Ford* (by *Francis E. Bentley*), for defendant Detroit Edison Company.

Before: Danhof, P. J., and Fitzgerald and Walsh,* JJ.

Fitzgerald, J. Defendants Michigan Bell Telephone Company and Detroit Edison were reimbursed for the cost of relocating utility equipment occasioned by a Detroit School District building program. Plaintiff Board of Education of the Detroit School District does not believe they should be required to compensate defendants for expenses incurred in accommodating the physical expansion of the Bellevue School system. We think otherwise.

In July 1962, the Detroit School District petitioned the Wayne County Circuit Court requesting that certain plats and an alley be vacated to permit construction of an addition to the Bellevue School. Both Michigan Bell and Detroit Edison filed objections. An interim order was entered in November 1962 provisionally reserving easement or reimbursement rights in the vacated plats and alley. A trial on the merits was held in abeyance pending the outcome of *Detroit v Michigan Bell Telephone Co,* 374 Mich 543; 132 NW2d 660 (1965), *cert den,* 382 US 107; 86 S Ct 256; 15 L Ed 2d 191 (1965).[1] The issues presented by stipulation in May 1963 were finally heard in October 1970. The trial court held that the Board of Education did not have the requisite police power to regulate public utility facilities and awarded final judgments of $1,880.42 and $1,489.90 to Michigan Bell and Detroit Edison respectively as reimbursement for equipment relocation costs. This appeal followed.

Plaintiff, in an exhaustive brief, argues that it

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] On February 2, 1965, the Michigan Supreme Court reversed the circuit court decision and granted the city's petition without requiring it to pay relocation costs to the public utilities where such relocation was necessary in connection with an urban redevelopment plan.

has the right, as does any other state agency or
municipal corporation, to exercise its general po-
lice power in compelling a public utility to remove
and relocate its equipment from a right-of-way
without paying compensation. Relying upon MCLA
340.192; MSA 15.3192, the school board contends
that the trial court erred in its restrictive interpre-
tation of legislative grants providing for necessar-
ily and fairly implied police power. They view the
vacation of the plats and alley as a municipal
regulation of paramount public purpose necessary
and proper in the interest of public health, safety,
and welfare. Finally, plaintiff maintains that de-
fendants use of their facilities together with mon-
eys expended for installation and maintenance
does not constitute a perpetual property right for
which compensation must be paid. Conversely,
defendants do not agree that the Legislature
granted the school board broad police powers.
They interpret plaintiff's argument concerning an
implied grant of police power as a vehicle designed
to relieve them of the obligation to provide just
compensation required by due process of law.
Since defendants have acquired vested property
rights to the vacated plats, plaintiff's attempt to
divest the utilities is an unconstitutional taking
for which just compensation must be paid.

The statutory grant of power relied upon by the
board appears in MCLA 340.192; MSA 15.3192:

"The said board shall be a body corporate under the
name and title of 'The Board of Education of the School
District of the City of _____' and under that name
may sue and be sued and may take, use, hold, sell and
convey real property without restriction as to location
and personal property, including property received by
gift, devise or bequest, as the interest of said schools
and the prosperity and welfare of said school district
may require. The said board may take and hold real

and personal property for the use of the public schools within and without its corporate limits and may sell and convey the same. The board chosen pursuant to this chapter shall be the successor of any school corporation or corporations existing within the limits of such city or cities and shall be vested with the title to all property, real and personal, vested in the school corporation of which it is the successor. Said board shall be liable to pay the indebtedness and obligations of the school corporations of which it is the successor in the manner and to the extent provided in this chapter. Said board shall have power to purchase and take by the right of eminent domain all property, erect and maintain all buildings, employ and pay all persons, and do all other things in its judgment necessary for the proper establishment, maintenance, management, and carrying on of the public schools and for the protection of other property of the school district, and to do anything whatever that may advance the interests of education, the good government and prosperity of the free schools in said city, and the welfare of the public concerning the same, and it shall have authority to adopt bylaws, rules and regulations for its own government and for the control and government of all schools, school property and pupils. If property is sought to be taken by eminent domain, such proceedings may be brought under the terms of Act No. 149 of the Public Acts of 1911, as amended, being sections 213.21 to 213.41, inclusive, of the Compiled Laws of 1948, or any other appropriate state law."

Listed below are portions of the Michigan Plat Act pertinent and in effect when this lawsuit was commenced.

1. MCLA 560.60; MSA 26.490.

"If any proprietor of part of a plat or the governing body of any municipality who consider it necessary or advisable in the interests of the peace, health and safety of its citizens, shall be desirous of altering or vacating, or correcting or revising the plat or part thereof, it shall be lawful for him or such governing

body, or the prosecuting attorney of the proper county, in the cases above specified, to petition the circuit court for the proper county, setting forth the particular circumstances of the case and giving a distinct description of the property to be vacated or altered, corrected or revised, the names of the persons to be particularly affected thereby, and the extent of their interest in that part of the town which it is proposed to alter or vacate, or to correct or revise." (Now MCLA 560.223; MSA 26.430[223].)

2. MCLA 560.2; MSA 26.432 defined terms thus:

"The words 'governing body,' as used in this act, shall be deemed to apply to and describe the township board of any township or the legislative body of any city or village as the case may be.

"The word 'municipality,' as used in this act, shall mean a township, city or village as the case may be." (Now MCLA 560.102; MSA 26.430[102].)

3. MCLA 560.190; MSA 26.430(190):

"The proprietor shall provide public utility easements in accordance with the provisions of section 139. The following shall apply to all public utility easements included in a subdivision:

"(a) Easements intended for use of public utilities shall not be deemed to be dedicated to the public but shall be private easements for public utilities and shall be equitably shared among such utilities.

"(b) The public utilities first using an easement shall be reimbursed by later users for all rearrangement or relocation costs.

"(c) Permanent structures may not be erected within easement limits by the owner of the fee but he shall have the right to make any other use of the land not inconsistent with the rights of public utilities, or the other uses as noted on the plat.

"(d) The public utilities shall have the right to trim or remove trees that interfere with their use of easements.

"(e) Nothing in this act shall be construed to limit any regulatory powers possessed by municipalities with respect to public utilities."

This controversy raises two questions: Is the board of education a municipal corporation possessing the police powers claimed pursuant to MCLA 340.192; MSA 15.3192? Are the defendant utility companies entitled to be compensated for relocation costs incurred in accommodating this expansion? We answer affirmatively in each instance.

School districts have been classified as municipal corporations in Michigan for some 95 years. *School District No 4 of the Township of Marathon v Gage,* 39 Mich 484 (1878); *Attorney General, ex rel Mc-Rae v Thompson,* 168 Mich 511; 134 NW 722 (1912); *Hall v Ira Twp,* 348 Mich 402; 83 NW2d 443 (1957); *Rasmussen v Lincoln Park School District,* 4 Mich App 278; 144 NW2d 644 (1966). There are cases which are unwilling to grant this classification to school districts, considering them as mere state agencies carrying out the distinctly governmental work of education, but the context in which this result is reached differs significantly from the case at bar. In *King v School District No 5,* 261 Mich 605; 247 NW 66 (1933), the classification of a school district as a quasi-municipal corporation served only to prevent the school district from being divested of land it had purchased and used for school purposes. By virtue of this classification, the Auditor General was denied authority to issue tax deeds to private purchasers covering land purchased by the school district. The case did not discuss the power and responsibility that attaches to quasi-municipal agencies which perform governmental functions nor does it distinguish this classification from one possessing the character of

a bona fide municipal corporation. An earlier case, *Attorney General, ex rel Kies v Lowrey,* 131 Mich 639; 92 NW 289 (1902), classified school districts as state agencies which were created by the Legislature subject to the constitution and existing laws of this state. While distinguishing municipal and quasi-municipal corporations, the Court focused only on the fact that both are subject to the authority of the state. The case involved the authority of the Legislature to change the boundaries of a school district and whether the district was deprived of the right to local self-government guaranteed to all municipalities by the constitution. This is not our case. We have no conflict between the exercise of power by the Legislature that may arguably rest within the province of a local school district. The threshold inquiry here is by what authority did the school board petition for vacation of the plats and alley in question.

Pertinent excerpts of MCLA 340.192; MSA 15.3192 bear repeating:

"Said board shall have power to purchase and take by the right of eminent domain all property, erect and maintain all buildings, employ and pay all persons, and do all other things in its judgment necessary for the proper establishment, maintenance, management, and carrying on of the public schools and for the protection of other property of the school district, *and to do anything whatever that may advance the interests of education, the good government and prosperity of the free schools in said city, and the welfare of the public concerning the same,* and it shall have authority to adopt bylaws, rules and regulations for its own government and for the control and government of all schools, school property and pupils. If property is sought to be taken by eminent domain, such proceedings may be brought under the terms of Act No. 149 of the Public Acts of 1911, as amended, being sections 213.21 to

213.41, inclusive, of the Compiled Laws of 1948, or any other appropriate state law." (Emphasis added.)

We begin by refuting the lower court's determination restricting the application of police power to those property rights which are deemed harmful. Such an interpretation limits the exercise of police power to those situations which reduce or eliminate existing or potentially dangerous property conditions which are detrimental to the health, safety, morals or general welfare. This restraint upon the exercise of police power is inconsistent with the Supreme Court's holding in *Thomas v Supervisors of Wayne County,* 214 Mich 72, 85–86; 182 NW 417, 421 (1921):

> "One of the purposes of a government such as ours is to promote the public welfare. The power to act, in doing so, is not confined to the suppression of what is harmful. It extends to providing appropriate facilities for making available to the public need all of the property and agencies of the government, whether National, State or municipal."

Thus, the regulation of the property right of the public utilities to accommodate the physical expansion of a school cannot categorically be considered an improper exercise of police power.

It is a well-settled principle that municipal corporations, in the absence of a constitutional grant of power, have only such police powers as are granted them by the Legislature.

> "[T]hey can exercise only such police powers as are granted in express terms, as are *necessarily or fairly implied in or incident to powers expressly granted,* or as are indispensable to accomplish the objects and purposes of the corporations." 56 Am Jur 2d, Municipal Corporations, § 428, p 471. (Emphasis added.)

The Michigan Supreme Court expanded this principle in *Bowler v Nagel,* 228 Mich 434, 440; 200 NW 258, 260 (1924):

" 'When action is taken by a state or one of its municipal subdivisions, manifestly in the interest of its people as a whole, and the rights of individuals are not abridged thereby, and such action is not within the inhibition of some constitutional or statutory provision, it should be upheld as a valid exercise of authority, though lacking in any positive grant of power to support it.'

"The power must, of course, be found in the legislative enactment. It need not, however, be delegated in express words. *City of Kalamazoo v Kalamazoo Circuit Judge,* 200 Mich 146 [166 NW 998 (1918)]. It is sufficient if it be 'necessarily or fairly implied in or incident to the powers expressly granted' or 'essential to the accomplishment of the declared objects and purposes' as set forth in the enactment. 1 Dillon on Municipal Corporations (5th ed), § 237. In section 239 it is said:

" 'The rule of strict construction of corporate powers is not so directly applicable to the ordinary clauses in the charter or incorporating act of municipalities as it is to the charter of private corporations.' "

The express language relating to the acquisition of property appears to be limited to purchase or taking by eminent domain. The vacation of the plats and alley in question is either a taking by eminent domain or it falls within the ambit of the general grant of police power authorizing the board "to do anything whatever that may advance the interests of education, the good government and prosperity of the free schools". In our review, the proper exercise of police power under the general welfare clause need not be limited to those powers expressly stated. It may very well assume the posture of that power necessarily and fairly implied in or incident to those powers expressly

stated. 56 Am Jur 2d, Municipal Corporations, § 428, p 471. The trial court construes the power of eminent domain specifically granted to the board as a limitation upon the exercise of their discretionary powers to those ministerial functions concomitant to the acquisition of property. The statute need not be interpreted so restrictively. The nature of the property interest held by the utilities is such that the petition to vacate was the proper vehicle under which to proceed in expanding their physical plant. Under the facts of this case, the legitimate public interest in enlarging educational facilities is paramount to the continued right of usage by the utilities of the public streets and the latter must yield. Whether it must do so at its own expense presents our second point of discussion.

Plaintiff begins with the contention that because it is engaged in the proper exercise of police power, it cannot be compelled to pay for relocation costs incident to the valid regulation of property right uses. It is their position that the common law requires public utilities to relocate at their own expense. A distinction is drawn between the regulation of a property right and a taking for which just compensation must be paid. Since the board has merely regulated the use of a property right subordinate to a paramount public purpose, the utilities must bear the relocation expenses. In support of this reasoning, plaintiff relies mainly upon *New Orleans Gas Light Co v Drainage Commission of New Orleans,* 197 US 453; 25 S Ct 471; 49 L Ed 831 (1905). There, property subjacent to New Orleans streets had long been used by the gas company to accommodate pipelines for the transmission of natural gas. The drainage commission required relocation of plaintiff's gas lines to facilitate the construction of a sanitary drainage system

for the entire city. Plaintiff alleged a taking and demanded compensation. The Supreme Court disagreed and required plaintiff to bear the cost of relocation. The Court was unwilling to rule that the city had granted to plaintiff the exclusive right to locate its pipeline in this area. In accommodating a legitimate work of paramount importance, plaintiffs were said to sustain only *damnum absque injuria.* The remaining thrust of plaintiff's argument is that defendants never suffered the loss of a tangible property right. At most, they were denied a property right use. The removal of defendant's equipment was considered merely incidental to plaintiff's proper exercise of administrative discretion.

Michigan courts have not directly addressed the question of financial responsibility under circumstances sufficiently similar to control the instant case. Our review of the factual circumstances and relevant authorities advanced by the parties leads us to conclude that the award of stipulated damages should be affirmed.

The provisions of MCLA 560.62; MSA 26.492 provide the authority under which the board filed its petition. It states in pertinent part:

"If the petition before the court involves the vacation of any alley, street or other public place then being used by any public utility for public utility purposes, it is hereby deemed necessary for the health, welfare, comfort and safety of the public to reserve an easement therein for the use of public utilities, and it is hereby confirmed that the court has the authority to reserve such an easement. The foregoing provision shall not be deemed to limit the authority of the court to reserve easements for the use of the public utilities in other cases required or consistent with the health, welfare, comfort or safety of the public, including a situation

where a public utility is not then making an actual use of the area to be vacated."

This provision was repealed by 1967 PA 288, eff Jan 1, 1968, and now appears in MCLA 560.226(d); MSA 26.430(226)(d):

"Any order under this section vacating, correcting or revising any highway, road, street or other land dedicated to the public and being used by any public utility for public utility purposes shall reserve an easement therein for the use of public utilities, and may reserve an easement in other cases."

The word "shall" in the amended portion clarifies the apparent legislative intent of its predecessor by imposing mandatory reservation of public utility easements. The provisions stated earlier in MCLA 560.190; MSA 26.430(190) support this interpretation by construing public utility easements as being privately owned and deserving of reimbursement for relocation costs in the event they are displaced by later users. We are not unaware of the language in this provision indicating that nothing in the act shall be construed to limit any regulatory powers possessed by municipalities regarding public utilities. Further analysis of Michigan authorities leads us to believe that the relocation costs awarded to defendants was not inappropriately granted.

In *Detroit v Michigan Bell Telephone Co, supra,* relocation costs were denied to public utilities required to move in order to facilitate an urban redevelopment plan. However, the gravamen of the decision hinged upon the adoption of the doctrine of *in pari materia* in construing both the plat act and a statute providing for the rehabilitation of blighted areas. Dissenting Justice O'HARA, joined by Justices DETHMERS and BLACK, set forth

several propositions which may be paraphrased as follows:

The franchise granted to utilities becomes a vested property right in the nature of a contractual right benefited by Federal and state constitutional guarantees. These rights are subject to the right of control by municipalities through the proper exercise of its police power. This police power is subject to limitations which take the form of statutory provisions requiring that existing easements be reserved or relocation costs be paid in the event property is vacated. The majority distinguished between the interpretation of the plat act where comprehensive redevelopment is involved and those isolated incidents of street and alley vacation, stating at page 562; 132 NW2d 668–669:

"We may say, therefore, that for comprehensive redevelopment planning under the RBA act,[2] provisions are made for both the creation and the retention, where necessary, of places in the public right-of-way for utility facilities. On the other hand, where no broad area redevelopment is pursued under the RBA act, or similar statutes, and, hence, there is no requirement, statutory or otherwise, for comprehensive facility redesign or rerouting, it seems that in an isolated instance of street or alley vacation some provision may need to be made for retention of space in the vacated public right-of-way for utility facilities, to insure continuity of service. This is what the reservation of 'easements' in the plat act is intended to provide. We hold that under present circumstances, 'easements' were not required to be reserved. If such were not required, then the city, under its stipulation with the utilities, is not required to pay relocation costs."

While the Court felt constrained to deny reloca-

[2] Rehabilitation of blighted areas act, 1945 PA 344, as amended, MCLA 125.71 *et seq.;* MSA 5.3501 *et seq.*

tion costs by virtue of considering both the RBA act and the plat act together, the protection of vested property rights in the nature of utility franchises remains viable. Plaintiff may choose to classify its petition to vacate as the regulation of a property right use rather than a taking, but in so doing it cannot hope to escape the responsibility of reimbursing defendants for relocation costs.

In *Center Line v Michigan Bell Telephone Co,* 387 Mich 260; 196 NW2d 144 (1972), the Supreme Court affirmed 26 Mich App 659; 182 NW2d 769 (1970), in granting relocation costs to Michigan Bell where utility easements were vacated pursuant to the rehabilitation of blighted areas act. The Court of Appeals again considered the acquisition and exercise of a franchise by a utility as a vested property right. See, also, *Niles v Michigan Gas & Electric Co,* 273 Mich 255; 262 NW 900 (1935).

We appreciate the decision in *New Orleans Gas Light Co, supra,* but we are not bound by its result. The nature of the general grant from the city to the gaslight company was subject to the public convenience of the city and its inhabitants and was not given to the exclusion of other concerns. A distinction can be drawn between the shift of equipment to accommodate a drainage system and the total extinguishment of a vested property right to facilitate a school building program. The latter occurred in the case at bar and compensation must be paid.

By this decision we leave intact the inviolability of vested property rights. The board was acting under the general welfare clause in vacating the plats and alley, but it does not necessarily follow that this can be accomplished without reimbursing those parties whose property interest has been reduced or eliminated. Here, provisional reserva-

tion of easements or reimbursement rights in the vacated property were granted. An interest in property was destroyed. Whether this extinguishment was tantamount to a taking or is the proper exercise of police power does not alter the fact that defendants are entitled to be compensated for a loss of a vested property right.

Affirmed. No costs, a public question.

WALSH, J., concurred.

DANHOF, P. J., concurred in result only.