SINGER ARCHITECTURAL SERVICES COMPANY v DOYLE

1. SCHOOLS AND SCHOOL DISTRICTS—POWERS OF SCHOOL DISTRICTS.
    School districts enjoy those powers expressly granted them by
    statutes or necessarily and fairly implied from those express
    powers.

2. SCHOOLS AND SCHOOL DISTRICTS—SALE OF REAL PROPERTY—INTER-
    EST IN PROPERTY—LAND CONTRACTS—STATUTES.
    A school district of the third class has the authority to convey a
    lesser interest in real property than the fee, which includes a
    sale by land contract wherein at time of execution the vendee
    receives only the equitable title, the legal title remaining in the
    vendor (MCLA 340.113; MSA 15.3113).

3. SCHOOLS AND SCHOOL DISTRICTS—SALE OF REAL PROPERTY—LAND
    CONTRACTS—COMMERCIAL ENTERPRISE.
    A school district which sold a parcel of land to a commercial
    developer on a land contract did not, by such sale, engage in a
    competitive business enterprise.

4. SCHOOLS AND SCHOOL DISTRICTS—SALE OF REAL PROPERTY—LAND
    CONTRACTS—STATUTORY POWERS—CASE PRECEDENT.
    A Supreme Court ruling which holds that a school district may
    not incur indebtedness exceeding its authorized revenues can-
    not properly be applied to prevent a school district from selling
    a parcel of land on a land contract; in such a sale, the school
    district does not become a guarantor or surety and the exten-
    sion of credit is not unauthorized where the statutory power to
    sell property includes the power to sell by land contract.

5. SCHOOLS AND SCHOOL DISTRICTS—SALE OF REAL PROPERTY—LAND
    CONTRACTS—RESTRICTION ON SALES.
    The Court of Appeals will not adopt, without explicit language

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Schools §§ 50–55.
[2–5] 68 Am Jur 2d, Schools §§ 67, 69.
[3] 68 Am Jur 2d, Schools §§ 75–77.
    Use of school property for other than public school or religious
    purposes. 94 ALR2d 1274.

from the Legislature, an interpretation of a school district's statutorily conferred power to sell property which would limit the power to cash sales only, thereby excluding a sale by land contract, because this would impose an unjust restriction on the school district.

Appeal from Oakland, Robert B. Webster, J. Submitted February 8, 1977, at Detroit. (Docket No. 27128.) Decided March 30, 1977. Leave to appeal applied for.

Complaint by Singer Architectural Services Company, Harbor Estates, and Transcon Builders, Inc., against Lewis Doyle and the other members of the city council of Keego Harbor, the City of Keego Harbor, the Keego Harbor building inspector, and School District No. 5, West Bloomfield Township, seeking a building permit, damages, or rescission of a land contract by which the plaintiffs purchased land from the school district which was subjected to subsequent zoning changes affecting the use of the property, and challenging the authority of the school district to sell the property on land contract. Summary judgment for plaintiffs on the issue of the authority to sell only. The defendant school district appeals, and plaintiffs cross-appeal on the computation of interest. Reversed and remanded.

*Dakmak, Gropman & Sinai, P. C.* (by *Dennis M. Powers),* for plaintiffs.

*Dell, Shantz, Booker & Schulte,* for West Bloomfield School District.

Before: BRONSON, P. J., and ALLEN and D. E. HOLBROOK, Jr., JJ.

ALLEN, J. We are asked to decide whether a third class school district may sell on a land

contract real property no longer required for school purposes. The trial court held the school board might sell for cash but not on a land contract and granted summary judgment in favor of plaintiffs. Defendant School District No. 5, West Bloomfield Township, appeals and plaintiffs cross-appeal on the computation of interest.[1] Since we are informed that other school districts have sold similar property on an installment basis, our decision on this issue of first impression transcends the interests of the litigants.

In May 1972, defendant, a third class school district, anticipating the sale of some 11.1 acres of its land formerly used as an athletic field, requested the city of Keego Harbor to rezone the property from residential and light industrial to light manufacturing and multiple residential. On December 7, 1972, the land was rezoned as requested. In January 1973, the school district declared the property no longer required for school purposes and advertised the land for sale "for cash or on a land contract" with a minimum down payment of 15% and the balance payable within three years with interest at 7%. On March 5, 1973, eight bids were received and opened at a public meeting. All bids were on a land contract basis with plaintiff Singer Architectural Services Company being the highest bidder.[2] On May 4, 1973, the parties executed a land contract for $210,000, with $31,500 paid down and the balance of $178,500 due in three annual installments of

---

[1] The judgment of the trial court declared the land contract void, and ordered return of the down payment of $31,500 with interest computed from May 6, 1975—that being the date of plaintiffs' second amended complaint which added Count III. Plaintiffs have cross-appealed claiming interest runs from the date the original complaint was filed, January 24, 1974.

[2] The bids received ran from a low of $68,350 to plaintiff's high bid of $210,000. The next highest bid was $201,000.

$59,500 with interest at 7%. Subsequently, Singer Architectural Services Company quit-claimed its interest in the land contract to Harbor Estates, a partnership, but Harbor Estates did not assume the debt on the land contract.

Four months following the signing of the land contract, the city of Keego Harbor reduced the maximum density allowable to multiple unit zoned areas from 15-1/2 single bedrooms and 13-1/2 double bedrooms per acre to 10 singles and 8 two-bedroom units per acre. Allegedly, no notice was given to plaintiffs of the special meeting of the city council called for the purpose of considering the density change. On January 24, 1974, plaintiffs filed a two-count complaint. Count I named as defendants the individual members of the council, the city council and the building inspector, and alleged that the changes in density were unreasonable and not required by reasons of public health, safety or welfare. Count I is not an issue in the present appeal. Count II named the school district as a party defendant, alleging the school district knew the density would be reduced and fraudulently withheld the information from plaintiffs. Count II is not an issue in this appeal but will become an issue at the trial level if this Court reverses the trial court's grant of summary judgment on Count III and remands for further proceedings. Count III was added in plaintiffs' second amended complaint filed May 6, 1975. This count challenged the authority of the school district to sell on land contract. Since plaintiffs' motion for summary judgment and the trial court's grant of summary judgment was posited solely on Count III, only the allegations relating to Count III are involved in the present appeal.[3]

---

[3] Plaintiffs have not paid any of the three annual installments or interest. Over $40,000 in interest has accrued.

It is axiomatic that Michigan school districts enjoy those powers expressly granted by statute or necessarily and fairly implied from the powers expressly granted by the Legislature. *Senghas v L'Anse Creuse Public Schools,* 368 Mich 557, 560; 118 NW2d 975 (1962), *Detroit Board of Education v Michigan Bell Telephone Co,* 51 Mich App 488, 496; 215 NW2d 704 (1974), *aff'd* 395 Mich 1; 232 NW2d 633 (1975). The statutory provisions pertinent to the issue at hand are:

"The board of any school district of the third class hereunder shall have the powers and duties:

"(a) * * * *to sell,* exchange or lease, subject to the provisions of section 354 of this act, any real or personal property of the district which is no longer required thereby for school purposes, and to give proper deeds, bills of sale *or other instruments passing title to the same;"* MCLA 340.113; MSA 15.3113. (Emphasis supplied.)

"The board of any school district of the third class shall have the powers and duties:

"(e) In general to do anything not inconsistent with this act which is necessary for the proper establishment, maintenance, management and carrying on of the public schools of such district." MCLA 340.121; MSA 15.3121.

"Every school district shall be a body corporate under the name provided in this act, and * * * *may sell and convey the same [real and personal property] as the interests of such district may require, subject to the conditions of this act contained." MCLA 340.352; MSA 15.3352. (Emphasis supplied.)*

While the cited provisions give the power to sell, they do not expressly give the power to sell by land contract. Neither do they limit the mode of conveyance. Defendant contends that since a land contract is a common and frequently used form for sales of real property it may fairly and reasonably

be implied that defendant may sell on land contract. We are not to presume, argues defendant, that the Legislature imparted a restrictive meaning to the word "sell", *viz:*—exclude sale on an installment basis, when no such restriction appears in the text of the statute.

Plaintiffs' counter-argument, adopted in substance by the trial court,[4] is five-pronged: (1) Since legal title remains in the vendor until the purchase price is paid in full a land contract is not an instrument "passing title"; (2) A land contract is a device by which credit is extended—in the instant case to a commercial enterprise and thus the school district is attempting to function as a commercial enterprise—a function prohibited by *Attorney General ex rel Sheehan v Detroit Board of Education,* 175 Mich 438; 141 NW 574 (1913); (3) The rationale of the opinion in *School District No 9 v McLintock,* 255 Mich 197; 237 NW 539 (1931), holding that a school district may not purchase real property by land contracts, extends *sub silentio* to proscribe sales by land contracts,[5] (4) Michi-

---

[4] "It would be convoluted reasoning for this court to avoid the thrust of the court's opinion in *School District No 9 v McLintock* [255 Mich 197; 237 NW 539(1931)]. In that case the court held that to purchase on land contract is to borrow money. For every person borrowing money there must be a lender. Thus, the converse of the holding in *School District No 9 v McLintock, supra,* must be the law in this state: To sell land on land contract is to lend money. Our Legislature has stated emphatically the categories of investment that may be made by a school district in MCLA 340.568. A district is restricted in its investment policy to United States Bonds, bills or notes, certificates of deposit, and commercial paper. The extension of credit by the state or its agencies to private corporations is barred by the Michigan Constitution. If the Supreme Court meant what it said, and still means what it said, in *School District No 9 v McLintock, supra,* then this court must hold that a school district has no power to sell land on land contract for the reason that such power has not been granted by the Legislature and for the further reason that a state agency is barred from an extension of credit by lending money through this form of transaction." (Circuit Court Opinion, pp 3–4.)

[5] After *McLintock,* the Legislature by 1972 PA 71 explicitly authorized school districts to purchase land by land contract. Plaintiffs

gan decisions[6] finding an implied power in a school board are inapposite since in all such decisions the implied power was necessary for the effective functioning of the school district but in the instant case sale of lands can be made with the buyer securing a mortgage and paying cash; (5) Authority elsewhere supports plaintiffs' position. *School District v Aetna Insurance Co,* 62 Me 330 (1873); *School District v Sanford,* 121 Wash 42; 207 P 1058 (1922). Piece by piece we respond to appellees' cogently presented arguments.

In *Fox v Adrian Realty Co,* 327 Mich 89, 92; 41 NW2d 486 (1950), our Supreme Court expressly held that the making of an executory land contract constituted "a sale" even though at the time of execution of the contract the vendee receives only the equitable title, the legal title remaining in the vendor. In 2 OAG, 1955–1956, No 2502 pp 184–185 (April 2, 1956), the Attorney General ruled that the authority granted school districts of the third class by MCLA 340.113; MSA 15.3113 included the power to convey a lesser interest than the fee:

"The statutory authority to sell, exchange, or make sale of real property, cited specifically above, certainly confers authority upon the respective Boards to grant or convey away the fee to land in accordance with the

argue that since the Legislature did not explicitly authorize sales by land contract such sales are still prohibited.

[6] *McLaughlin v Fordson Board of Education,* 255 Mich 667; 239 NW 374 (1931) (implied power to hire school superintendent on a three-year basis); *Detroit Board of Education v Michigan Bell, supra,* (implied power to vacate plats); *LaPorte v Escanaba Area Public Schools,* 51 Mich App 305; 214 NW2d 840 (1974) (implied power to grant an exclusive franchise to photographer to use school premises to take class pictures). *See also Bowler v Nagel,* 228 Mich 434; 200 NW 258 (1924) (implied power of the city of Detroit to establish a pension fund for its employees).

statutes, and by implication the legislature has conferred the authority upon the respective boards to grant or convey away some lesser interest in land, other than the fee."

Based upon the above authority we conclude that a land contract is an instrument qualifying within the powers granted in the statutory authority cited above.

Nor are we persuaded that upon the sale to Singer, the school district embarked upon a commercial enterprise of the type prohibited by *Attorney General v Board of Education, supra.* That case involved a resolution of the Detroit Board of Education directing the board to purchase high school textbooks and arrange for their sale at cost to high school pupils. A bill was brought by the Attorney General on the relation of two complaining local bookdealers. The Court sustained a lower court injunction against the school board on grounds that under the resolution the school board would take on the character of a commercial trading corporation.[7] Quite apart from the fact that a modern court might well come to—or in fact has come to—a contrary result,[8] we do not believe that by the isolated land contract sale in the instant case the defendant was engaging in a competitive business enterprise. Suppose, for example, that in the instant case the sale had been

---

[7] "We are impressed, however, that the grant we are considering was not intended to empower the board of education of the city of Detroit to do *everything whatever* that may advance the interests of education in the city of Detroit, but only such things as it may do without changing its character as a board of education, without, for example, assuming or taking on the character of a commercial or trading corporation." *Attorney General v Board of Education, supra,* pp 441–442.

[8] For example, *see Bond v Ann Arbor School District,* 383 Mich 693; 178 NW2d 484 (1970), where the Court not only allowed the purchase of school textbooks but struck down any charge or assessment of fees for the cost of the books.

to another school or to a church or a local unit of government wishing to acquire a playground or athletic field? Would the installment contract be legal in such instances because it was sold to a non-commercial enterprise, but not permissible when sold to a commercial developer? We hardly think so and accordingly reject plaintiffs' second reason for affirmance.

We come now to what we believe is the gravamen of plaintiffs' argument and the respected trial judge's rationale for declaring the land contract void. Was the trial court correct in concluding that *School District No 9 v McLintock, supra,* not only prohibited purchases by land contract but by implication or logical extension also prohibited sales by such instruments? A careful reading of *McLintock* discloses a factual situation quite unlike that involved in the instant case. There, a primary district had entered into two land contracts totaling $45,000 to purchase a new school site. Its statutory authority to purchase was by statute conditioned upon the district's voting a tax or voting to bond. At the time the contracts were executed the district had not voted to tax or to bond. The Court first found that to *purchase* on a land contract is to incur indebtedness, then held that since there was no statutory authority to incur indebtedness for the purchase of a school site except under the provisions of the statute and since the statute had not been complied with, the contracts were void.[9] We find nothing in *McLintock* which extrapolates to the case at hand. The thrust of that decision was totally—and may we add properly—directed towards prevention of

---

[9] "The chief question is that, no fund having been provided out of which the purchase might be made, the school board could not bind the district as purchaser for the indebtedness evidenced by the contracts." *McLintock, supra,* p 199.

indebtedness exceeding then-authorized revenues. The situation is different where, as here, the school district sells an asset on a land contract. The danger is far less because the school district will be receiving money rather than paying it out. In case of default the school district still holds the legal title and may protect itself by foreclosure or forfeiture and repossession of the asset sold.

The trial court felt that if *McLintock* found a land contract purchase to be borrowing, then a land contract sale is lending and is a violation of Const 1963, art 9, § 18. That section does not prohibit all lending. *Advisory Opinion re Constitutionality of 1966 PA 346,* 380 Mich 554; 158 NW2d 416 (1968), found that the purpose of the constitutional provision was to make certain that the state and its political subdivisions do not accumulate *unauthorized* debts by indorsing or guaranteeing the obligations of others. In the situation before us, the school district has not become the guarantor or surety of anyone. Nor is the extension of credit unauthorized if the power to sell includes the power to sell via land contract. More to the point is *Alan v Wayne County,* 388 Mich 210, 330; 200 NW2d 628 (1972), where the Court said:

"The Const 1963, art 9, § 18 proscription against state or county grant of credit is not offended by a fair exchange of value for value."

See also *City of Clovis v Southwestern Public Service Co,* 49 NM 270; 161 P2d 878, and 44 CJ § 4095, p 1152. Plaintiffs themselves placed a value on the property in an arms length transaction in competition with other bidders. Obviously, at the time, they felt that the contract was a fair exchange for value. The allegations in Count II that

it wasn't a fair exchange are not before us on this appeal.

We conclude, therefore, that the prohibitions of *McLintock* do not extend to sales by land contract. But, assuming *arguendo* that we are in error and that *McLintock* does proscribe both land contract purchases and sales, then we must equally conclude that when the Legislature removed the prohibition on land contract purchases[10] it also removed the *McLintock* restraints on land contract sales. It is inconsistent to argue on the one hand that *McLintock* prohibits both, and then to argue on the other hand that when the prohibition is removed it is applicable but to one.

Appellees' fourth argument in support of affirmance is that in all of the cases relied upon by the defendant[11] the implied power was necessary for the discharge of the school district's educational responsibilities whereas, in the instant case, the school district could still sell but could not sell on an installment basis. In other words, plaintiffs limit the statutorily conferred power of sale to cash sales only. We believe such interpretation would impose an unjust restriction on a school district. The notice of sale did not limit bids to land contract. As noted earlier it called for either "cash or land contract". Because the abandoned athletic field was so geographically located that its highest and best use would be multi-housing development, it was not by happenstance that all bids were submitted on a land contract basis. Realistically, housing developers are unable to mortgage vacant lands and additionally borrow for construction purposes. The realities of the marketplace

---

[10] 1972 PA 71, effective March 9, 1972. MCLA 340.576b; MSA 15.3576(2).

[11] *See* footnote 6, *supra*.

limit the bid to installment payments. To compel a cash bid would drive the offered price down. Essentially, plaintiffs' argument, if accepted, would penalize the school district by forcing it to sell for less than comparable lands in non-governmental ownership. We do not believe the Legislature, sans explicit language, intended to make the distinction.

Lastly, we address the issue of authority from other jurisdictions. It is questionable whether either *School District v Aetna Insurance Co, supra,* or *School District v Sanford, supra,* are supportive of plaintiffs' position. In the first mentioned case, voters of the school district voted in 1860 to sell a schoolhouse and appointed a committee to sell. The committee then sold for 10% cash with the balance on deferred payments. The Court acknowledged that had the voters specifically directed the committee to sell on terms, the sale would be valid. Furthermore, unlike the case before us, no statutory authority was cited authorizing sale by "deeds or other instruments passing title". In the second case the statute empowered school boards of the third class "to sell lots or other real estate as directed by vote to do so". Pursuant to the statute the voters authorized a sale on installment terms. The court sustained the contract. There is also authority from other jurisdictions that the power to sell includes the power to sell on an installment basis.[12] But basically, the decisions from other states are so factually dissimilar and of so ancient a vintage we find them of no persuasion.

As stated earlier, the question presented is of

---

[12] "Where the terms of sale of municipal property, real or personal, are not otherwise prescribed in the act of authority, *credit may be given* in the discretion of the agency effecting the sale. 63 CJS § 970, p 521.

first impression, and assumes more than usual interest because other school districts have, from time to time, sold on land contract. We share the learned and able trial court's concern, and respect its analysis. Yet, for the reasons developed in this opinion, we cannot agree. The power "to sell" is specific and unqualified. It is strengthened by the grant of power to give deeds or "other instruments passing title". It is further strengthened by the ancillary powers cited earlier. Our Supreme Court has held a land contract constitutes a sale, and the Attorney General has ruled that the statute includes the power to convey a lesser interest than a fee.[13] Land contracts are commonly employed in sales of real estate and it only seems logical that this fact was known to the Legislature which did not exclude a sale on terms when it granted the unrestricted power to sell. We hold the contract valid, reverse the summary judgment granted on Count III and remand to the trial court on Counts I and II. Our holding makes it unnecessary to write to plaintiffs' cross appeal.[14]

Reversed and remanded in accordance with this opinion. No costs, a public issue being involved.

[13] *Fox v Adrian Realty Co, supra;* 2 OAG 1955–1956, No. 2502, *supra.*

[14] *See* footnote 1, *supra.*