**J. TOM WATSON, as Attorney General of the State of Florida, v. MILLARD F. CALDWELL, as Governor of the State of Florida, et al., etc. as and composing the Trustees of the Internal Improvement Fund of this State, et al., etc.**

35 So. (2nd) 125                                    January Term, 1948
April 23, 1948                                              Division A

J. Tom Watson, Attorney General, *Sumter Leitner* and *Ernest W. Welch,* Assistant Attorneys General, for appellant.

*Ausley, Collins & Truett* for State Board of Education of the State of Florida, *Parker, Foster & Wigginton* for Trustees of the Internal Improvement Fund of the State of Florida and *Will M. Preston,* for Everglades National Park Commission, appellees.

TERRELL, J.:

Appellant instituted this suit by bill in equity against the Trustees of the Internal Improvement Fund and the State Board of Education, (from here on out called the Trustees and the Board) praying for cancellation of the following deeds: (1) Deed from the Board to the Trustees, dated June 3, 1947, conveying 7680 acres of school land. (2) Deed from the Trustees to the Board, dated June 3, 1947, conveying 7680 acres of swamp and overflowed lands. (3) Deed from the Trustees to the United States of America, dated June 3,. 1947, conveying the same lands described in the deed first mentioned in this paragraph. The Everglades National Park Commission, was permitted to intervene and become a party defendant to the bill of complaint. A motion to dismiss was granted and the plaintiff appealed.

It is first contended that the conveyance from the Board to the Trustees and in turn the conveyance from the Trustees to the Board were void and of no effect because there was no attempt to comply with Section 270.07, et seq. Florida Statutes 1941, requiring that such lands be advertised and sold to the highest and best bidder. The third deed from the Trustees to the United States was never delivered so is not further considered.

There is no merit to appellant's contention, because, (1) Section 270.07, et seq. control the sale of public lands in the

open market and have no application to an exchange by the State or its agencies unless so stated by the terms of the act. 59 C.J. Section 653. This was not a "sale" but an exchange in kind to effectuate a definite legislative purpose which we shall now discuss more fully. (2) The legislative purpose or policy that the exchange was designed to aid was the establishment of the Everglades National Park, authorized by Chapter 20,996, Acts of 1941, Section 264.01 et seq., Florida Statutes 1941. Chapter 13,887, Acts of 1929, Chapters 16,995, 16,997, Acts of 1935, Chapter 17,903, Acts of 1937, Chapter 19,319, Acts of 1939, Chapters 20,669, 20,998, Acts of 1941, and Chapters 23,616, 23,617, 23,670, 23,910, Acts of 1947 have to do with different phases of the same project. None of these acts require the exchange to be advertised, because the legislature, the policy making arm of the State Government, was so thoroughly committed to the Everglades National Park project that it was never considered that the lands would be other than a donation to assist in perfecting the overall scheme.

The Trustees and the Board had ample power to sell and convey lands held by them. Sections 253.02 and 229.08, Florida Statutes 1941. The legislature had ample power to contribute lands to the Everglades National Park project held by the Trustees and the Board in the manner proposed by the Park acts. In fact the primary question is one of complying with these acts and we think the legislature devised a lawful plan to do so. No one was in position to resist land donation to it by the State but the Federal Government and it is not here complaining. The Act, Section 264.09, Florida Statutes 1941, in terms authorizes the Trustees "in their discretion" to fix the terms of sale of the lands held by them but here they were proceeding under the acts relating to the establishment of the Everglades National Park which clothed them with plenary power.

It is next contended that lands held by the Board are school lands held in trust for the benefit of the State school fund and cannot be disposed of except by advertisement and sale to the highest bidder as provided in Section 270.07 et seq., Florida Statutes 1941.

Section 229.08, authorizing the Board to sell and dispose

of school lands and to "fix the terms of sale" is a complete answer to this question. We construe the language of this act to empower the Board to sell for cash, on terms, or it may exchange for other lands in kind. An exchange in kind to aid the Park project is involved here. There is not the slightest suggestion that the land received in exchange by the Board was not of equal value to the lands disposed of, so the school fund was not in the slightest depleted, and being so, this contention fades out of the picture. What has been said in answer to this question may be considered in supplement to the answer to the first question.

It is further argued that the net result of the whole transaction participated in by the Trustees, the Board, the State and the United States, is to divest the State of its school lands without compensation.

It is quite true that there is no express provision in the acts relating to the park project, authorizing the conveyance of school lands for that purpose, but there can be no doubt that such an exchange and conveyance as we here approve was implied by the clear terms of the acts recited. They create the Everglades National Park Commission and clothe it with power to acquire and and exercise the power of eminent domain. Other provisions empower the Trustees to exchange land outside the Park for private lands within the Park, both the Park Commission and the Trustees may convey land to the United States, the counties within the Park area may convey to the United States and the State may surrender its jurisdiction over the Park. It was known to the legislature and all the State officers who participated in this transaction, that school lands were witthin the Park area. It was also provided that all lands within the Park area be conveyed to the United States. The Trustees, the Board and the State officers construed the acts to authorize the exchange of school lands for the purpose stated and we cannot say they were in error.

No single project in the State had been given more publicity than the creation of the Everglades National Park, that the lands comprising it were to be furnished the Federal Government free of charge and that the policy of the State

has been to encourage the project. The integrity of the school fund has been rigidly observed, no constitutional mandate has been shown to have been violated nor is there the slightest showing of lack of power on the part of the legislature to engage in and participate in the project in the manner shown. Such projects have been generally approved throughout the country.

There is no showing of the exercise of unlawful authority on the part of any one concerned, so the decree appealed from is affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.