Mr. Ernest Ellison Auditor General Post Office Box 1734 Tallahassee, Florida 32301
Dear Mr. Ellison:
This is in response to your request for an opinion on substantially the following question:
 WHERE THE DISTRICT SCHOOL BOARD HAS SOLD REAL ESTATE TO A PRIVATE NONPROFIT CORPORATION, WHICH PROPERTY THE BOARD IS LEGALLY AUTHORIZED TO DISPOSE OF AT PUBLIC OR PRIVATE SALE, MAY THE BOARD ACCEPT PARTIAL PAYMENT OF THE PURCHASE PRICE AND DEFER TO STATED FUTURE TIMES THE PAYMENT OF THE BALANCE OF THE PURCHASE PRICE WITH SUCH DEFERRED PAYMENTS BEING SECURED BY A PURCHASE MONEY MORTGAGE ON THE REAL ESTATE SOLD?
You state that during your audit of the Duval County School Board, it has come to your attention that the school board sold and conveyed surplus school property to a private, nonprofit corporation on terms other than cash. According to the information supplied to this office, the property was originally put out for bid in March, 1978; three appointed appraisers in valuing the property concluded that `there exists in the subject property, as if vacant, a value from a range of a low of $100,000 to a high of $110,000 . . . .' Two bids, both for cash, were received. One bid was received from Cathedral Foundation for $110,250; the other bid was for $25,000. The board accepted the Foundation's bid; however, the Foundation was unable to make arrangements to pay the purchase price in cash as required by the bid and made a counter proposal for purchase on terms. The board determined that the counter proposal could not be accepted under the bid specifications and therefore placed a new call for bids for cash or terms acceptable to the seller by a qualified buyer. Only one bid, that of Cathedral Foundation, was received by the board which accepted the bid. As consideration the board received partial payment for a portion of the purchase price and agreed that the purchaser may pay the balance over a period of years. The balance is under the terms of the agreement secured by a purchase money mortgage. With interest included, the board will receive approximately $136,602. You inquire as to the authority of the school board to permit such a deferral of the balance of the purchase price of the property.
Your inquiry appears to be prompted in part by the provisions of s 10, Art. VII, State Const., which prohibit a public body from giving, lending or using its taxing power or credit to aid a private person or corporation. Many of the cases relating to s 10, Art. VII (or its predecessor s 10, Art. IX, State Const. 1885), have stated that the purpose or function of this constitutional provision is `to keep the State out of private business; to insulate State funds against loans to individual corporations or associations and to withhold the State's credit from entanglement in private enterprise.' See, e.g., Dade County, Board of Public Instruction v. Michigan Mutual Liability Co., 174 So.2d 3, 6 (Fla. 1965); Bailey v. City of Tampa, 111 So. 119 (Fla. 1926). In considering whether the public credit has been loaned, used or given, the courts have generally stated that the public must be either directly or contingently liable to pay something to someone. See, Wald v. Sarasota City Health Facilities Authority,360 So.2d 763, 768 (Fla. 1978), wherein the court stated that the word `credit' as used in s 10, Art. VII, State Const., implies the imposition of some new financial liability upon the state or political subdivision which results in the creation of a state or political subdivision debt for the benefit of private enterprise. And see, Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304, 309 (Fla. 1971) (neither full faith and credit nor taxing power of state or political subdivision pledged to payment of revenue bonds where purchaser of such bonds may not look to any legal or moral obligation on part of the state, county or authority to pay any portion of the bonds); State v. Housing Finance Authority of Polk County,376 So.2d 1158 (Fla. 1979) (lending of credit means the assumption by the public body of some degree of direct or indirect obligation to pay the debt of the third party; where there is no such undertaking by the public body to pay the obligation from public funds and no public property is placed in jeopardy by default of the third party, there is no lending of public credit). Cf., 56 Am. Jur.2d Municipal Corporations s 590 (fact that sales price of municipal property is payable in installments does not constitute lending or pledging of credit or donation within constitutional provisions prohibiting municipality from lending credit to private corporation or individual or from making donation of public money). In AGO 082-42 this office considered whether the provisions of s 10, Art. VII prohibited a municipality from taking back a purchase money mortgage when selling surplus municipal property. Based upon the foregoing, this office was of the opinion that the taking back of a mortgage on the sale of surplus property was not a loan or use of the municipality's credit within the meaning of s 10, Art. VII, provided there was no assumption by the city either directly or indirectly to pay a debt of a third party nor any public property was placed in jeopardy by the default of such party. Similarly, the selling of surplus school property on terms and the granting of a purchase money mortgage by the school board would not, in my opinion, appear to be violative of s 10, Art. VII provided that no new financial liability is placed upon the school board.
You also question whether the school board has the necessary statutory authority to sell surplus property on terms which permit payment over a period of years. This office has previously stated that district school boards have no inherent or common law powers but rather possess only those powers which have been expressly or impliedly conferred by statute. See, e.g., AGO's 080-42, 076-61, 075-148. You inquire as to whether s 230.03(2), F.S., vests the school board with `home rule' powers to authorize the school district to sell the property on terms. In 1978, the Legislature amended s 230.03(2) to provide that district school boards `may exercise any power for educational purposes except as otherwise provided by the State Constitution or law.' See, Ch. 78-86, Laws of Florida. The phrase `educational purposes' for purposes of this section is expressly defined and limited to those activities or powers `exercised in the establishment and maintenance of courses, classes, institutions, and services adequate to meet the educational needs of all citizens of the district.' The scope of this amended statutory provision does not appear to have been judicially determined; however, the definition of educational purposes expressly relates to the establishment and maintenance
of, inter alia, institutions and services to meet the educational needs of the citizens of the district. I cannot say that the foregoing statutory provision, in and of itself, authorizes the school board to sell surplus property on terms which permit payment over a period of years.
Section s 235.04(1), F.S., however, provides that subject to the rules of the state board of education, a district school board `may dispose of any land or real property which is, by resolution of such board, determined to be unnecessary for educational purposes as recommended in an educational plant survey.' The statute requires that the board `take diligent measures to dispose of educational property only in the best interests of the public'; it does not, however, specify the manner in which such property is to be disposed. Prior to the statute's amendment in 1973, s 235.04 had authorized the school board to take `diligent measures to dispose of school property only on the most advantageous terms by public or private sale.' In construing the foregoing statutory language, this office was of the opinion that a school board could exercise its discretion in entering into a contract for the sale of surplus property which permitted the purchaser of such property to make payments over several years. See, AGO 063-59. In that opinion, however, this office assumed that title to the property would not be conveyed until the transaction was complete and the full purchase price plus stipulated interest paid. In a subsequent informal opinion, this office determined that the immediate transfer of title to real estate for a partial cash payment with the balance of the purchase price being paid in deferred payments and a purchase money mortgage given as security, if determined by the `school board to be the most advantageous terms upon which the particular property can be sold, would appear to be within the authorization of s 235.04, F.S.' Inf. Op. to Ernest Ellison, April 13, 1966. See also, s 230.23(2), F.S., authorizing school boards to manage and dispose of school property `to the best interests of education.' Section 235.04 was amended in 1973 to authorize the disposal of property by the school board `in the best interests of the school district' and the language requiring the board to dispose of such property on the most advantageous terms was deleted. See, s 9, Ch. 73-338, Laws of Florida. Section 5 of Ch. 77-458, Laws of Florida, further amended s 235.04 to authorize the school board `to dispose of educational property only in the best interests of the public.'
Thus the statutes appear to be silent as to the manner of disposing of surplus property other than to require that such property be disposed of only in the best interest of the public, s 235.04, and to the best interests of education, s 235.23(2). The rules of the state board of education provide that a school board may dispose of surplus property by public or private sale. Rule 6A-2.28(1), F.A.C. When the real property, in the opinion of the school board, has an estimated value in excess of $25,000, the rule requires the board to dispose of such property by public sale. I am not aware of any judicial decision, statutory provision or rule or regulation which requires that a public sale be a sale for cash only, nor has such a decision or provision been brought to this office's attention; rather the term `public sale' appears to refer to and require a sale in which notice to the public is given. See generally, Black's Law Dictionary, Sale, p. 1505 stating that a `public sale' is a sale made in pursuance of a notice, by auction or public outcry. Cf., 35 Words and Phrases, Public Sale, pp. 625-627. Compare, Black's Law Dictionary, Sale, p. 1505 defining a `private sale' as `[o]ne negotiated and conducted privately between buyer and seller, and not made by advertisement and public outcry or auction.' It therefore appears that the rules of the state board are also silent as to whether the sale of surplus property by a school board may be for cash or terms. As noted, this office has previously opined that a school board under the former language of s 230.04, F.S. 1971, requiring the board to dispose of school property only on the most advantageous terms, was authorized to sell property on terms other than cash. And see, Watson v. Caldwell, 35 So.2d 125 (Fla. 1948), wherein the Florida Supreme Court, in construing the language of s 229.08, F.S. 1941, which authorized the board of education to sell and dispose of school lands and to fix the terms of sale, stated that `[w]e construe the language of this act to empower the Board to sell for cash, onterms, or it may exchange for other lands in kind.' (e.s.) While s 235.04 was amended to provide that the school board may dispose of such property only in the best interests of the public, I cannot say that the Legislature intended to restrict the school board's power to sell such property only for cash. Cf., 63 C.J.S. Municipal Corporations s 970 (where terms of sale of municipal property not otherwise prescribed in act of authority, credit may be given in discretion of agency effecting sale); and Singer Architectural Services Co. v. Doyle, 254 N.W.2d 587, 591
(Mich.Ct.App. 1977), wherein the court concluded that the authority of a school board to sell surplus property included the power to sell on an installment basis, stating:
 [P]laintiffs limit the statutorily conferred power of sale to cash sales only. We believe such interpretation would impose an unjust restriction on a school district. . . . The realities of the market-place limit the bid to installment payments. To compel a cash bid would drive the offered price down. Essentially, plaintiffs' argument, if accepted, would penalize the school district by forcing it to sell for less than comparable lands in non-governmental ownership. We do not believe the Legislature, sans explicit language, intended to make the distinction.
The present statutes authorize the disposal of surplus property in the best interests of education and of the public. The term `dispose' is a broad term, and would appear to encompass both a sale of property for cash or on terms. See, Black's Law Dictionary, Dispose p. 557 (4th Rev. ed.) (to alienate or direct the ownership of property, often used in restricted sense of a sale); Webster's Third International Dictionary, Dispose p. 654 (to transfer into new hands or to bhe control of someone else). Cf., Warden v. City of Grafton, 26 S.E.2d 1 (W.Va. 1943) (power to `dispose' includes power to encumber or mortgage); Stay v. Stay, 77 So. 699 (Ala. 1918) (provision in will authorizing daughter to control and dispose of estate includes power to mortgage); Bank of Hartford v. Buffalow, 117 So. 183 (Ala. 1928) (provision in deed forbidding grantee to sell or dispose of property without grantor's joining therein includes giving of a mortgage); and Platt v. Union Pacific R.R. Co., 99 U.S. 48 (1878) (use of words `or dispose of' are not redundant or synonymous with `sold' but contemplate a use of the lands granted different from the sale of them and a mortgage of them is such a use).
Thus while this matter is not free from doubt, I am of the opinion until judicially or legislatively determined otherwise that the school board may dispose of surplus school property on terms other than cash provided that such disposition is, in the board's opinion, in the best interests of the public and of education. Cf., Harvey v. Board of Public Instruction of Sarasota County, 133 So. 868 (Fla. 1931), wherein the court stated that the board holds school property in trust, as trustees for the citizens and taxpayers upon whose property taxes may have been levied to purchase such property and that the business affairs of the board should be conducted with due respect to the trust reposed and that there is a consequent responsibility to dispose of this trust property only upon adequate consideration received therefor, and consistent with good business judgment and sound business principles.
In summary, unless and until judicially or legislatively determined otherwise, a district school board may lawfully sell surplus school real property, which the board is legally authorized to dispose of at public or private sale, on terms other than cash, and may accept partial payment of the purchase price and defer the payment of the balance of the purchase price to a future time on an installment payment basis with the deferred balance secured by a purchase money mortgage on the property sold, provided that such disposition of the surplus property is determined by the board to be in the best interest of the public and of education.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General